USAMA KAHF (SBN 266443)
E-Mail: ukahf@fisherphillips.com
SEAN T. KINGSTON (SBN 276099)
E-Mail: skingston@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

Attorneys for Defendant
PARAMOUNT RESIDENTIAL MORTGAGE
GROUP, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONWIDE MORTGAGE BANKERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC., <br><br> Defendant. | CASE NO.: <br><br> *[Removed from Riverside County Superior Court]* <br><br> **NOTICE OF PETITION FOR REMOVAL OF ACTION PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441 AND 1446** <br><br> Complaint Filed:  July 12, 2024 <br> Trial Date:  None. |

# **TABLE OF CONTENTS**

I.    FACTUAL AND PROCEDURAL BACKGROUND ................................. 1

II.   TIMELINESS OF REMOVAL ................................................. 3

III.  REMOVAL IS SUBJECT TO A LIBERAL PLEADING STANDARD ........................................................................ 4

IV.   FEDERAL QUESTION JURISDICTION ..................................... 4

  A.   Plaintiff Seeks a Declaration That the Restrictive Covenants Agreement Is Unlawful Because It Goes Beyond the Definition of "Trade Secrets" Under Federal Law .............................. 4

  B.   Plaintiff NMB's Complaint Necessarily and Substantially Depends on the Disputed Application of the Commerce Clause of the United States Constitution ........................................ 7

V.    DIVERSITY JURISDICTION ................................................ 11

  A.   Basis of Original Jurisdiction ............................................ 11

  B.   Complete Diversity .......................................................... 12

     1.   Plaintiff NMB's Citizenship ...................................... 12

     2.   Defendant PRMG's Citizenship ................................. 13

  C.   The Amount in Controversy Exceeds $75,000 ....................... 14

  D.   Should the Court Find the Allegations Insufficient, Defendant PRMG Is Entitled To An Opportunity To Present Evidence ......... 17

VI.   ALL OTHER REQUIREMENTS FOR REMOVAL ARE SATISFIED ...................................................................... 18

  A.   Venue and Intradistrict Assignment ................................. 18

  B.   Notice of Removal to Court and Parties ............................. 19

VII.  CONCLUSION ............................................................... 19

VIII. PRAYER FOR REMOVAL .................................................. 20

FP 51815445.6

1

2

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

3

*Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006)---------------- 14

4

*Academy of Country Music v. Continental Casualty Company*, 991 F.3d. 1059,

5

    1060 (9th Cir. 2021) ------------------------------------------------------------------ 18

6

*Arias v. Residence Inn by Marrio*t, 936 F.3d 920, 922 (9th Cir. 2019)----------- 18

7

*Cohn v. Petsmart, Inc.* (2002) 281 F.3d 837, 840 ------------------------------------ 15

8

*Dart Cherokee Basin Operating Co. LLC v. Owens,* 574 U.S. 81, 83 (2014)  4, 15,

9

    18

10

*Davis v. Advanced Care Technologies, Inc.*, No. CIV S 06-02449 DFL DAD,

11

    2007 WL 1302736 (E.D. Cal. May 1, 2007) ------------------------------------- 16

12

*Elevance Health, Inc. v. Mohan*, No. 1:23-cv-01497-SEB-MJD, at *10 (S.D. Ind.

13

    Sep. 15, 2023 -------------------------------------------------------------------------- 8

14

*Flood v. Kuhn*, 443 F.2d 264 (2d Cir. 1971) ----------------------------------------- 8

15

*Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for*

16

    *Southern California* (1983) 463 U.S. 1, 22 ------------------------------------- 6, 9

17

*Garnett v. ADT LLC*, F. Supp. 3d 1332, 1334 (E.D. Cal. 2015)-------------------- 4

18

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312

19

    (2005) ----------------------------------------------------------------------------------- 9

20

*Grable*. In *R.I. Truck Ctr. v. Daimler Trucks N. Am.*, 92 F.4th 330, 333 (1st Cir.

21

    2024)-------------------------------------------------------------------------- 9, 10, 11

22

*Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 1192 (2010) ---------------- 13

23

*Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011)-------- 12

24

*Hunt v. Wash. State Apple Adver. Comm'n* (1977) 432 U.S. 333, 347 ------------ 15

25

*JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010) ------------------------ 5

26

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ---------------- 12

27

*Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) ------------------------------------- 12

28

ii

TABLE OF AUTHORITIES

*Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) ------------ 14

*Luna v. Kemira Specialty, Inc.,* No. CV 08-04908 MMM (JCx), 575 F.Supp.2d 1166 (C.D. Cal. Sept. 11, 2008)------------------------------------------ 15

*McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994) ----------------------- 15

*Mechanix Wear, Inc. v. Performance Fabrics, Inc.,* No. 2:16-cv-09152-ODW (SS), 2017 WL 417193 (C.D. Cal. Jan. 31, 2017) -------------------------------- 15

*Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885–886 (9th Cir. 2013) -- 12

*Murphy Bros., Inc. v. Michetti Pipe Strining, Inc.*, 526 U.S. 344, 354 (1999)----- 4

*Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953) ---------------------- 19

*Rivet v. Regions Bank of Louisiana* (1998) 522 U.S. 470, 475 --------------------- 6

*Roth v. Commercial Bank*, 799 F.Supp.2d 1107, 1117 (C.D. Cal. 2010)---------- 14

*Sam Francis Foundation v. Christies, Inc.* (9th Cir. 2015) 784 F.3d 1320, 1323 - 7

*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) -------- 14

*Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) ---- 14

*St. Judge Medical S.C., Inc. v. Biosense Webster, Inc.,* No. CV 14-1326-SVW-AGR, 2014 WL 12686383 (C.D. Cal. Aug. 27, 2014) ---------------------------- 16

*Strotek Corp. v. Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002) ----------------------------------------------------------------------- 12

<u>**FEDERAL STATUTES**</u>

18 U.S.C. § 1836------------------------------------------------------------ 5

18 U.S.C. § 1839------------------------------------------------------------ 5

28 U.S.C. § 1331----------------------------------------------------1, 4, 6, 9, 11, 20

28 U.S.C. § 1332----------------------------------------------1, 11, 12, 13, 14, 17, 20

28 U.S.C. § 1441------------------------------------------ 1, 4, 12, 17, 18, 19, 20

28 U.S.C. § 1446----------------------------------------------1, 3, 4, 12, 15, 19, 20

28 U.S.C. § 1447------------------------------------------------------------ 18

Rule 8(a) of the Federal Rules of Civil Procedure ------------------------------- 4

### CALIFORNIA CASES

*ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 21-22-------------------- 5

*Herbert v. Los Angeles Raiders, Ltd.,* (1991) 23 Cal.App.4th 414, 423 ----------- 8

*Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, *2 (E.D. Cal. May 1, 2007) ----------------------------------------------------------------------------------- 15

*Thompson v. Impaxx, Inc.*, 113 Cal.App.4th 1425, 1429 (Cal. Ct. App. 2003)---- 6

### CALIFORNIA STATUTES

California Business and professions Code Section 16600 --------------------- 6, 7, 8

California Business and Professions Code Section 16600.1 --------------------- 2, 7

California Business and Professions Code Section 16600.5 ------------------ 2, 7, 11

NOTICE OF PETITION FOR REMOVAL OF ACTION PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441 AND 1446

FP 51815445.6

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF NATIONWIDE MORTGAGE BANKERS, INC., AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC. ("Defendant PRMG"), through its counsel of record, respectfully petition for removal of the action filed by Plaintiff NATIONWIDE MORTGAGE BANKERS, INC. ("Plaintiff NMB") from the Superior Court of the State of California, in and for the County of Riverside, Case No. CVRI2403987, to the United States District Court for the Central District of California. This removal is based on the grounds of federal question jurisdiction and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331, § 1332, and § 1441(a) and (b), and is timely under 28 U.S.C. § 1446. This Petition for Removal is supported by the exhibits filed concurrently herewith. The bases for removal are that Plaintiff NMB's Complaint necessarily seeks a declaration applying a federal statute, it necessarily and substantially depends on the disputed application of the Commerce Clause of the United States Constitution, and there is complete diversity of citizenship of the parties. Defendant PRMG provides the following information in support thereof:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

1.    On or about July 12, 2024, Plaintiff NMB filed an unverified complaint ("Complaint") against Defendant PRMG in the Superior Court of the State of California, County of Riverside, entitled *Nationwide Mortgage Bankers, Inc. v. Paramount Residential Mortgage Group, Inc.,* Case No. CVRI2403987 ("State Court Action"). Declaration of Usama Kahf ("Kahf Decl.") at ¶ 2; **Exhibit ("Ex.") 1**. The allegations of the Complaint in the State Court Action are incorporated by reference in this Notice of Removal without admission of or agreement to the truth of any of them.

/ / /

2.     Plaintiff NMB personally served a copy of the summons and complaint on or about July 24, 2024. Kahf Decl. at ¶ 3, Ex. 2.

3.     Defendant PRMG did not answer or file a responsive pleading in response to Plaintiff NMB's Complaint in Riverside County Superior Court prior to removal. Kahf Decl. at ¶ 4.

4.     The Complaint asserts a single cause of action against Defendant PRMG for declaratory relief in relation to alleged unlawful restrictive covenants entered into by Defendant PRMG's former employees. *Id.,* at ¶¶ 2, 5, Ex. 1. Plaintiff NMB's sole request for relief is "[f]or a judicial declaration from the Court that California Business and Professions Code 16600 *et seq.* applies to the non-competition provisions at issue here." *Id*. Plaintiff NMB cites to California Business and Professions Code Sections 16600.1 and 16600.5, as amended effective January 1, 2024, which states, "(a) Any contract that is void under this chapter is unenforceable regardless of where and when the contract was signed" and (b) An employer or former employer shall not attempt to enforce a contract that is void under this chapter regardless of whether the contract was signed and the employment was maintained outside of California." *Id*.

5.     At paragraph 40 of the Complaint, and in support of its allegation that the restrictive covenants are unlawful and that "[Defendant PRMG] was not interested in protecting its confidential information, but rather wanted to restrain the Unlawfully Restricted Employees from working for anyone in the industry other than [Defendant PRMG]," Plaintiff NMB cites to the July 20, 2022, lawsuit filed by Defendant PRMG against Plaintiff NMB in the United States District Court for the District of New Jersey (Case 3:22-cv-04656-ZNQ-RLS) ("New Jersey Lawsuit"). *Id*. In the New Jersey lawsuit, Defendant PRMG (as the plaintiff in that case) alleges that Plaintiff NMB encouraged and enabled Defendant PRMG's former employees to breach the same contractual obligations at issue in Plaintiff NMB's Complaint. *Id*., at ¶ 6. Specifically, in the New Jersey Lawsuit, Defendant

2

PRMG alleges that Plaintiff NMB unlawfully raided Defendant PRMG's employees from several offices and hired over forty (40) employees who were responsible for $260 million in annual loans that generated over $3 million in annual revenue, accessed Defendant PRMG's computers without authorization and, in the process, misappropriated valuable trade secrets of Defendant PRMG. *Id*.

6.    Plaintiff NMB filed a Motion to Dismiss for Lack of Jurisdiction. The New Jersey Court denied this Motion and determined that it had federal question jurisdiction. But the Court did not address diversity jurisdiction. *Id.*, at ¶ 7. In the New Jersey Lawsuit, Plaintiff NMB filed counterclaims for unfair competition, abuse of process, and tortious interference with economic advantage or employment contract. Plaintiff NMB amended their counterclaims to include a single counterclaim for unfair competition and seeks "an award of actual and compensatory damages; economic damages; injunctive relief or other equitable relief [and] attorneys' fees and costs." *Id*., at ¶ 6. Plaintiff NMB filed amended counterclaims, which the New Jersey Court dismissed with prejudice. *Id*.

7.    No further proceedings have been had in the State Court Action as of the date of this Notice. The Proof of Service and summons and complaint constitute all process, pleadings, and orders served on or by Defendant PRMG in the State Court Action. By signing this Notice of Petition for Removal, counsel for Defendant PRMG verify that the items attached to the Declaration of Usama Kahf as Exhibits **1** to **3** are true and complete copies of the process, pleadings, and orders in the State Court Action.

## II.    TIMELINESS OF REMOVAL

8.    Under 28 U.S.C. Section 1446(b), a "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after

the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." The 30-day period for removal is triggered once service occurs. *Murphy Bros., Inc. v. Michetti Pipe Strining, Inc.*, 526 U.S. 344, 354 (1999).

9.      In addition, this Notice of Removal has been filed within one year of commencement of the action in state court as required by 28 U.S.C. § 1446(c). Therefore, this Notice of Removal has been timely filed.

## III.    REMOVAL IS SUBJECT TO A LIBERAL PLEADING STANDARD

10.      In 2014, the United States Supreme Court held that notices of removal are subject to the same general pleading standards applicable to complaints pursuant to Rule 8(a) of the Federal Rules of Civil Procedure and that, accordingly, such notices need not attach evidence nor meet a burden of proof, but rather need contain only a "short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co. LLC v. Owens,* 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)). This governing principle also applies to a removing party's allegations as to the amount in controversy. *Id.; see also Garnett v. ADT LLC*, F. Supp. 3d 1332, 1334 (E.D. Cal. 2015). Only if the court or another party contests the allegations of removability must the removing party submit evidence supporting its allegations, whereupon removability is decided under a preponderance of the evidence standard. *Dart Cherokee*, 574 U.S. at 88.

## IV.    FEDERAL QUESTION JURISDICTION

11.      This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 and is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441 (a).

A.      **Plaintiff Seeks a Declaration That the Restrictive Covenants Agreement Is Unlawful Because It Goes Beyond the Definition of "Trade Secrets" Under Federal Law.**

12.      Plaintiff NMB files the instant action as a remedy to Defendant

4

PRMG's New Jersey Lawsuit, where Defendant PRMG bases its claims on the Defend Trade Secrets Act. In the instant lawsuit, Plaintiff NMB has alleged that the "Restrictive Covenants Agreement" violates federal law, namely the Defend Trade Secrets Act of 2016, codified at 18 U.S.C. § 1836, et seq. ("DTSA") Specifically, Plaintiff alleged that "[t]he definitions of 'Trade Secrets' and 'Confidential Information' are extremely overbroad, go well beyond the definitions of trade secrets under California and Federal law, and have the effect of restraining the employees from engaging in a lawful profession, trade or business." *Id.,* at ¶¶2, 5.

13.    While Plaintiff NMB explicitly references "federal law" and attaches the "Restrictive Covenants Agreement" to NMB's Complaint, Plaintiff NMB also artfully pleads that the Restrictive Covenants Agreement goes "beyond the definitions of trade secrets under California" to disguise its true intention of seeking relief under the DTSA. *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010) ("[T]he well-pleaded complaint rule has a necessary corollary—the artful pleading doctrine. Under the artful pleading rule a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.")

14.    Protection of information under the DTSA requires the protector (Defendant PRMG) to meet a higher burden in comparison to California law. Specifically, under the DTSA, information is only a trade secret if it is not "generally known to, and not…readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(B). This is not required under California law: "'[O]ur Legislature chose to exclude from the definition only that information which the industry already knows, as opposed to that which the industry could easily discover.'" *ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 21-22. In other words, unlike the DTSA, "under California law, information can be a trade secret even though it is readily ascertainable." *Id.* Though Plaintiff NMB has

alleged violations of both Federal and California law, Plaintiff NMB will use Federal law (the DTSA) as its primary, if not only, source of law, to argue that the Restrictive Covenants Agreement's restrictions on use and disclosure of trade secrets are unenforceable.

15.    Plaintiff NMB asserts a single claim for declaratory relief, seeking a judicial declaration that "the unlawful non-competition provisions, and provisions purportedly protecting confidential information and trade secrets, . . . are void and invalid under California Business and professions Code Section 16600 et. eq."

16.    Inherent in this claim is a request for a judicial declaration that the definition of "Trade Secrets" in the Restrictive Covenants Agreement "go[es] well beyond the definitions of trade secrets under . . . Federal law[.]" Kahf Decl., at ¶¶ 2, 5, Ex. 1, at ¶ 24.]

17.    If the definition of "Trade Secrets" in the Restrictive Covenants Agreement does <u>not</u> stray beyond the definition of "trade secret" under the DTSA, then Plaintiff NMB's claim necessarily fails, due to California's exception to the general ban on non-competition agreements for contract provisions that prohibit the misappropriation of protectable trade secrets. *See, e.g.*, *Thompson v. Impaxx, Inc.*, 113 Cal.App.4th 1425, 1429 (Cal. Ct. App. 2003) ("Antisolicitation covenants are void as unlawful business restraints except where their enforcement is necessary to protect trade secrets.").

18.    Because Plaintiff NMB's claim for relief necessarily relies on a declaration that the definition of "trade secrets" in the Restrictive Covenants Agreement goes "well beyond the definition[] of trade secrets under . . . Federal law," the Complaint raises a federal question for purposes of 28 U.S.C. § 1331. "[A] plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet v. Regions Bank of Louisiana* (1998) 522 U.S. 470, 475 citing *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California* (1983) 463 U.S. 1, 22.

**B.**  **Plaintiff NMB's Complaint Necessarily and Substantially Depends on the Disputed Application of the Commerce Clause of the United States Constitution**

19.    Plaintiff NMB has alleged that California Business and Professions Code Sections 16600.1 and 16600.5 apply extraterritorially to employment relationships outside of California. Extraterritorial application of California Business and Professions Code Sections 16600.1 and 16600.5 must be examined under the Dormant Commerce Clause of the United States Constitution.

20.    Plaintiff NMB's extraterritorial invocation of Section 16600 of the Business & Professions Code violates the Dormant Commerce Clause. The Dormant Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Sam Francis Foundation v. Christies, Inc.* (9th Cir. 2015) 784 F.3d 1320, 1323. Where a "state statute facially regulates a commercial transaction that takes place wholly outside of the State's borders…it violates the Dormant Commerce Clause." *Id.* (quotation marks and citation omitted).

21.    Section 16600, as amended effective January 1, 2024, facially violates the Dormant Commerce Clause because it regulates extraterritorial transactions, specifically providing that it applies "regardless of whether the contract was signed and the employment was maintained outside of California." Business and Profession Code 16600.5(b). Here, Plaintiff NMB is attempting to apply Section 16600 to thousands of employment relationships outside of California where the employees have never been residents of California and were not recruited by Plaintiff NMB to move to California. Plaintiff NMB seeks a declaration from the Court that Section 16600 invalidates employment agreements between Defendant PRMG and non-California residents merely because Defendant PRMG is headquartered and incorporated in California even though the agreements were

7

1    executed and performed wholly outside California.

2        22.    Indeed, the California Court of Appeals has held that an earlier, less

3    restrictive version of Section 16600 violated the Dormant Commerce Clause.

4    *Herbert v. Los Angeles Raiders, Ltd.,* (1991) 23 Cal.App.4th 414, 423. In *Herbert*,

5    a football player argued that a provision of the NFL's contract with the NFL Players

6    Association, restricting the terms on which "free agents" (players whose contract

7    with their current team has expired) could switch to a new team, violated Section

8    16600 and the California Constitution. The court explained that "[w]here the nature

9    of an enterprise is such that differing state regulation, although not conflicting,

10    requires the enterprise to comply with the strictest standard of several states in order

11    to continue an interstate business extending over many states, the extra-territorial

12    effect which the application of a particular state law would exact constitutes, absent

13    a strong state interest, an impermissible burden on interstate commerce." *Id*. at

14    422 (quoting *Flood v. Kuhn*, 443 F.2d 264 (2d Cir. 1971)). The court held that the

15    player's alleged "right to work as a professional football player ... may not be

16    enforced because of its impermissible burden on interstate commerce." *Herbert*, 23

17    Cal. App. 4th at 424.

18        23.    Akin to *Herbert*, permitting Defendant PRMG's former employees to

19    work for Plaintiff NMB and divert Defendant PRMG's clients and employees using

20    confidential inside information would effectively require Defendant PRMG "to

21    comply with the strictest standard of several states." Specifically, it would require

22    Defendant PRMG to account for California's near-complete ban on noncompete

23    and non-solicitation agreements – in all its employment relationships, regardless of

24    where the employees at issue are located. But California law is limited to

25    California. *See, e.g.*, *Elevance Health, Inc. v. Mohan*, No. 1:23-cv-01497-SEB-

26    MJD, at *10 (S.D. Ind. Sep. 15, 2023 ("Overlooked in [the employee's] argument,

27    however, is that California law does not apply here.").

28        24.    "Federal courts have regularly taken original jurisdiction over

8

FP 51815445.6

declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd. of State of Cal,* 463 U.S. 1, 22, at 19. In response to this lawsuit, Defendant PRMG would be coerced into seeking relief to enforce the Restrictive Covenants Agreement pursuant to the Dormant Commerce Clause. In fact, Defendant PRMG has already sought enforcement of the Restrictive Covenants Agreement in its New Jersey Lawsuit, where the Court determined that it had federal question jurisdiction.

25.    Further, federal question jurisdiction will lie if a state cause of action (1) necessarily raises a federal issue that is (2) disputed and (3) substantial, and (4) the court may entertain the case without disturbing the congressionally approved balance of federal and state judicial responsibilities. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

26.    The United States Court of Appeals for the First Circuit recently confirmed that an embedded dispute over the Dormant Commerce Clause can create federal question jurisdiction under *Grable*. In *R.I. Truck Ctr. v. Daimler Trucks N. Am.*, 92 F.4th 330, 333 (1st Cir. 2024), there was a dispute over the extraterritorial application of a Rhode Island law regulating truck dealerships ("Dealer Law"). A truck dealer ("RITC") filed a protest against an out-of-state manufacturer ("Daimler") before the Rhode Island Motor Vehicle Dealers License and Hearing Board ("Board"), seeking a ruling from the Board that Daimler violated the Dealer Law. The Board dismissed the protest, in part, based on application of the Dormant Commerce Clause, and RITC filed a state-court complaint alleging the Board's dismissal was improper. *Id.* at 335-37.  RITC did "not allege in its claim pertaining to the Board's dismissal of [the claim] that the Board violated federal law, constitutional or otherwise." *Id.* at 341.

27.    Nevertheless, applying the *Grable* factors, the court concluded that the claim arose under federal law within the meaning of 28 U.S.C. § 1331, and the *R.I.*

*Truck* analysis demonstrates why Plaintiff NMB's Complaint raises a federal question in this case.

28.    First, the *R.I. Truck.* court concluded the claim "necessarily raised" the Dormant Commerce Clause, because RITC could not prevail unless the Dormant Commerce Clause issue was resolved in its favor. *Id.* at 342. Here, Plaintiff NMB's Complaint also "necessarily raises" the Dormant Commerce Clause, because Plaintiff NMB affirmatively seeks to invalidate employment agreements between Defendant PRMG and thousands of non-California residents, and the only way it can do that is if it succeeds in arguing that the Dormant Commerce Clause does not preclude extraterritorial application of California law.

29.    Second, the *R.I. Truck* court concluded the Dormant Commerce Clause issue was "actually disputed," because the parties disagreed about whether the Board properly applied the Dormant Commerce Clause. *Id.* at 343. Here, the parties also "actually dispute" the application of the Dormant Commerce Clause, as manifested by Plaintiff NMB's attempt to apply California law extraterritorially to invalidate thousands of employment agreements between Defendant PRMG and non-California residents.

30.    Third, the *R.I. Truck* court concluded the Dormant Commerce Clause issue was "substantial." "Substantiality demands that an embedded federal question be important to the federal system, not just to the parties." *Id.* (quotation and citations omitted). The court observed that the Supreme Court has recently reiterated that the Dormant Commerce Clause "reflects a central concern of the Framers that was an immediate reason for calling the Constitutional Convention," *Id.* (quotation and citations omitted). Plus, "constitutional questions may be the more likely ones to reach the level of substantiality that can justify federal jurisdiction," especially when they present a "nearly pure issue of law" that could be "settled once and for all." *Id.* (citations omitted). The *R.I. Truck* court found it persuasive that "courts around the country may be informed" by the Dormant

Commerce Clause issue in that case, because a variety of cases had dealt with the extraterritorial application of similar dealer-protection statutes. *Id.* at 344. All of the same conclusions apply with equal weight here. The Dormant Commerce Clause issue in this case is "substantial" because (a) the Dormant Commerce Clause itself was a "central concern" for the Framers; (b) this is a constitutional issue that addresses a pure question of law; and (c) this case could resolve a critical constitutional question "once and for all" for California employers who will inevitably face similar challenges to their contracts with out-of-state employees under Section 16600.5.

31.    Finally, the *R.I. Truck* court held it could entertain the Dormant Commerce Clause issue without "disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 344. The court focused its analysis on the fact that the Dormant Commerce Clause issue was "independent," not dependent on the state-level administrative record or "factfinding" by the Board. *Id.* at 345. The issue was whether the Board made an "error of federal constitutional law" for reasons "independent of any disputed fact[.]" *Id.* Likewise, here, the application of the Dormant Commerce Clause to Plaintiff NMB's attempted extraterritorial application of Section 16600.5 is a purely legal issue that does not implicate any "state judicial responsibilities" or factfinding.

32.    Accordingly, this is a civil action arising under the laws of the United States under 28 U.S.C. § 1331, for which the district courts of the United States have original jurisdiction. Therefore, removal is proper here.

## V.    DIVERSITY JURISDICTION

### A.    Basis of Original Jurisdiction

33.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). As set forth below, 28 U.S.C. section 1332(a) grants district courts original jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

citizens of different states. This case meets all of the diversity statute's requirements for removal and is timely and properly removed by the filing of this Notice. See 28 U.S.C. §§ 1332, 1441, and 1446.

### B. **Complete Diversity**

*1. Plaintiff NMB's Citizenship*

34. Plaintiff NMB was incorporated in the State of Delaware and was domiciled in the State of New Jersey at the time this action commenced and at the time of removal. Kahf Decl. at ¶ 2; **Ex. 1** at p. 3, ¶ 11. There is nothing in the Complaint that suggests Plaintiff NMB's address is outside of New Jersey. The presumption of continuing domicile provides a legal presumption that Plaintiff NMB is still a resident of the State of New Jersey. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885–886 (9th Cir. 2013) ("a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted.... This presumption has been widely accepted, including by this [the Ninth] circuit."). For removal purposes, citizenship is measured both when the action is filed and removed. *Strotek Corp. v. Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). For diversity purposes, a person is a "citizen" of the State where he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *Mondragon*, 736 F.3d at 885–886 (citing *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) ("Evidence of a person's place of residence…is prima facie proof of his domicile.")). In fact, it is presumed that a natural person's residence is also his or her domicile, and a party resisting this presumption bears the burden of producing contrary evidence. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986). Accordingly, Plaintiff NMB therefore is, and at all times since the commencement of this action has been, domiciled in and a citizen of New Jersey.

12

FP 51815445.6

2.     *Defendant PRMG's Citizenship*

35.     At the time Plaintiff NMB filed the Complaint in the Riverside Superior Court, and at the time this Notice of Removal was filed, Defendant PRMG was (and remains) a citizen of the state of California.

36.     Pursuant to 28 U.S.C. section 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 1192 (2010) ("[w]e conclude that the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities"). This will be "where the corporation maintains its headquarters. *Id*.

37.     At the time this action was filed and at the time this Notice of Removal was filed, Defendant PRMG is and was a citizen of the state of California, within the meaning of 28 U.S.C. section 1332(c)(1). At all material times, Defendant PRMG is now, and was, incorporated under the laws of the State of California and has maintained, and currently maintains, its principal place of business and headquarters in California. Under the "nerve center" test, Defendant PRMG's "principal place of business" is Corona, California:

- Defendant PRMG maintains its headquarters in Corona, California.
- Corona, California is where Defendant PRMG's officers direct, control, and coordinate Defendant PRMG's business activities.
- High-level decisions about Defendant PRMG's business, strategy, operations, and investments made by its senior-level executives are based out of its headquarters in Corona, California.
- Defendant PRMG's headquarters in Corona, California is the location of Defendant PRMG's executive and administrative offices, including its corporate finance, accounting, human resources, information technology, and legal departments.

13

- Defendant PRMG's headquarters in Corona, California is the location of Defendant PRMG's senior executives.

38.     Based on the forgoing, Plaintiff NMB and Defendant PRMG are citizens of different states and complete diversity exists between the parties. See 28 U.S.C. 1332(a)

### C.     The Amount in Controversy Exceeds $75,000

39.     In the absence of a "good faith" demand on the face of the state court complaint, a defendant may show "by a preponderance of the evidence, that the amount in controversy exceeds the statutory amount." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010); *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). In other words, this Court may consider whether it is facially apparent from the Complaint that it is more likely than not that the jurisdiction amount of $75,000 is in controversy. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Defendant, however, is not obliged to "research, state, and prove the plaintiff's claims for damages." *Singer*, 116 F.3d at 377.

40.     In assessing the amount in controversy, "a court must assume that the allegations in the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." See *Roth v. Commercial Bank*, 799 F.Supp.2d 1107, 1117 (C.D. Cal. 2010) (internal citations omitted). Further, the Court may examine extrinsic evidence of the amount in controversy. *See Singer*, 116 F.3d at 377.

41.     While Defendant PRMG denies any claim for relief as to Plaintiff NMB's claims, Defendant PRMG can satisfy its burden of showing that the jurisdiction threshold of $75,000 is in controversy. *Sanchez*, 102 F.3d at 404. "[That] burden is not 'daunting,' as courts recognize that under this standard, removing defendant is not obligated to 'research, state, and prove the plaintiff's claim for damages.'" *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, *2

14

1   (E.D. Cal. May 1, 2007) (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D.

2   Ky. 1994)). "[A]s specified in § 1446(a), a defendant's notice of removal need

3   include only a plausible allegation that the amount in controversy exceeds the

4   jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89; see also 28 U.S.C. §

5   1446(a).

6       42.    While Plaintiff NMB only seeks judicial declaration and costs of suit,

7   "[i]n actions seeking declaratory or injunctive relief, it is well established that the

8   amount in controversy is measured by the value of the object of the litigation."

9   *Cohn v. Petsmart, Inc.* (2002) 281 F.3d 837, 840 quoting *Hunt v. Wash. State Apple*

10  *Adver. Comm'n* (1977) 432 U.S. 333, 347.

11      43.    "The object of the litigation" in this case (and the New Jersey Lawsuit)

12  are the restrictive covenants. In *Hunt,* the Washington State Apple Advertising

13  Commission ("WSAAC") sought to invalidate a statute that prohibited the display

14  of apple grades on containers. *Hunt*, 432 U.S. 333, 335. Defendant argued that the

15  WSAAC did not meet the amount-in-controversy requirement, but the Court

16  disagreed and stated that "[t]he value of [the] right [of the individual Washington

17  apple growers and dealers to conduct their business]…is measured by the losses

18  that will follow from the statute's enforcement." *Id.* at 347. Plaintiff NMB has filed

19  this lawsuit to defend against Defendant PRMG's New Jersey Lawsuit, where

20  Defendant PRMG has alleged $3.9 million in lost profits. California Federal Courts

21  have routinely found that the amount-in-controversy requirement is satisfied in

22  cases with similar claims. *See, e.g., Luna v. Kemira Specialty, Inc.,* No. CV 08-

23  04908 MMM (JCx), 575 F.Supp.2d 1166 (C.D. Cal. Sept. 11, 2008) (amount in

24  controversy requirement satisfied in former employee's action for injunction

25  preventing enforcement of a non-competition clause); *Mechanix Wear, Inc. v.*

26  *Performance Fabrics, Inc.,* No. 2:16-cv-09152-ODW (SS), 2017 WL 417193

27  (C.D. Cal. Jan. 31, 2017) ($75,000 threshold met "[w]here declaratory relief claims

28  form the basis of a case" and object of the litigation is a non-compete clause."); *St.*

*Judge Medical S.C., Inc. v. Biosense Webster, Inc.,* No. CV 14-1326-SVW-AGR, 2014 WL 12686383 (C.D. Cal. Aug. 27, 2014) (value of declaratory/injunctive relief met amount in controversy requirement when former employee alleged that the information sought to be protected by non-competition agreement were "large expensive pieces of capital equipment."); *Davis v. Advanced Care Technologies, Inc.*, No. CIV S 06-02449 DFL DAD, 2007 WL 1302736 (E.D. Cal. May 1, 2007) (in an action for declaratory relief relating to a non-competition agreement, motion for remand was denied where (i) the "nature and scale" of defendant's business would "surely exceed" $75,000 and (ii) plaintiff would stand to lose well over $75,000 if prevented from working in a new position.)

Here, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, based on the following allegations and evidence:

- Under the guise of protecting unidentified employees, Plaintiff NMB actually seeks to benefit itself by invalidating the restrictive covenants identified in Plaintiff NMB's complaint, which would result in financial gain over $75,000 to Plaintiff NMB. Plaintiff NMB revealed its true intention when it alleged that Defendant PRMG's demands were "anticompetitive in nature," and that Defendant PRMG demanded that "[Plaintiff NMB] not compete with [Defendant PRMG] in the market for customers." Kahf Decl. at ¶ 1, Ex. 1, at p. 8, ¶ 35. Clearly, Plaintiff NMB's main objective is to avoid Defendant PRMG's alleged attempt to protect its confidential information, which both Plaintiff NMB and Defendant PRMG value as well over $75,000. Moreover, Plaintiff NMB alleged that it "hired a number of former [Defendant PRMG] employees." Kahf Decl. at ¶ 1, Ex. 1, at pp. 7-8, ¶ 32. *Mechanix*, 2017 WL 417193 ("where the object of litigation is a non-compete clause" the amount in controversy requirement was met by a single employee's salary). Here, where Plaintiff NMB has

admitted to hiring a "number of former [Defendant] employees," (41 employees as alleged in the New Jersey Lawsuit), Plaintiff cannot legitimately claim that the amount in controversy is less than $75,000.

- Plaintiff NMB's Complaint cites to Defendant PRMG's New Jersey Lawsuit wherein Defendant PRMG alleged that Plaintiff NMB hired forty-one (41) of Defendant PRMG's former employees. Defendant PRMG further alleged in the New Jersey Lawsuit that these forty-one (41) employees were responsible for over $260 million in annual loans that generated over $4 million in revenue on an annual basis. Plaintiff NMB filed counterclaims in the New Jersey Lawsuit for unfair competition, abuse of process, and tortious interference with economic advantage or employment contract and seeks "an award of actual and compensatory damages; economic damages; injunctive relief or other equitable relief [and] attorneys' fees and costs." Kahf Decl. at ¶¶ 5-7.

44.  Thus, the matter in controversy here exceeds the sum or value of $75,000, exclusive of interest and costs.

45.  Pursuant to 28 U.S.C. §§ 1332 and 1441(a), this State Court Action may be removed to the United States District Court for the Central District of California, Eastern Division since it is more than likely that the amount in controversy exceeds $75,000, exclusive of interest and costs, and because there was at the time this action was filed, and there is now, diversity of citizenship between Plaintiff NMB and Defendant PRMG.

### D.  **Should the Court Find the Allegations Insufficient, Defendant PRMG Is Entitled To An Opportunity To Present Evidence**

46.  Should the Court determine that the allegations pled are insufficient to establish the requisite amount in controversy, the Court must allow for Defendant to present evidence of such, instead of issuing a *sua sponte* Remand

17

FP 51815445.6

Order. In *Academy of Country Music v. Continental Casualty Company*, the Ninth Circuit held that the trial court erred as a matter of law in issuing a *sua sponte* remand order and transmitting the action to state court. See *Academy of Country Music v. Continental Casualty Company*, 991 F.3d. 1059, 1060 (9th Cir. 2021). In its opinion, the Ninth Circuit held that "the district court 'exceeded the scope of its § 1447 (c) authority by issuing the remand order in the first place'" because (1) the remand order required "that the notice of removal 'prove' the amount in controversy"; and (2) the remand order "deprived [defendant] of a 'fair opportunity to submit proof.'" *Id.* at 1068-70.

47.    As outlined above, the removing party is not required to produce evidence in support of its Notice of Removal until the amount in controversy is challenged. *Id*. at 1069-70, quoting *Arias v. Residence Inn by Marrio*t, 936 F.3d 920, 922 (9th Cir. 2019) ("a 'notice of removal "need not contain evidentiary submissions" but only plausible allegations of the jurisdictional elements.'"); see also *Dart Cherokee*, 574 U.S. at 89 ("[e]vidence establishing the amount is required…only when the plaintiff contests, or the court questions, the defendant's allegation."). Thus, Defendant PRMG is only required to allege plausible allegations at this stage. Pursuant to *Academy* and its progeny, if the Court questions the sufficiency of Defendant PRMG's allegations, this Court must first "issue an order to show cause requiring [Defendant PRMG] to prove [by a preponderance of the evidence] more than $75,000 was in controversy" before remanding the case to state court. *Academy*, 991 F.3d 1059, 1069.

## VI.    ALL OTHER REQUIREMENTS FOR REMOVAL ARE SATISFIED

### A.    Venue and Intradistrict Assignment

48.    Pursuant to 28 U.S.C. section 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the District Court of the United States for the district and division embracing the place where

18

such action is pending." *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953) (holding the venue of a removed action is governed by 28 U.S.C. section 1441(a) and is properly laid in the district embracing the place where the action is pending). This Court (the Eastern Division of the Central District of California) embraces the Riverside County Superior Court, which is where Plaintiff NMB's Complaint was originally filed and where the action is currently pending. Accordingly, this Court is the appropriate court to which to remove this action.

### B.    Notice of Removal to Court and Parties

49.    As required by 28 U.S.C. section 1446(d), a copy of the Notice of Petition for Removal of Action will be attached to a pleading titled Notice to State Court and Adverse Party of Removal of Action to Federal Court and promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, in and for the County of Riverside.

50.    In compliance with 28 U.S.C. section 1446(a), true and correct copies of all "process, pleadings, and orders" from the State Court Action served on Defendant PRMG or filed by Defendant PRMG are attached to this Notice of Petition for Removal of Action as **Exhibits 1** to **3.**

### VII.    CONCLUSION

51.    Federal question jurisdiction exists because Plaintiff NMB's complaint necessarily requires a declaration of whether the Restrictive Covenants Agreement's definition of "Trade Secrets" goes beyond the definition of trade secrets under the federal DTSA. Further, federal question jurisdiction exists because Plaintiff NMB's complaint (1) necessarily raises a federal issue that is (2) disputed and (3) substantial, and (4) the court may entertain the case without disturbing the congressionally approved balance of federal and state judicial responsibilities. Moreover, complete diversity of citizenship exists inasmuch as Plaintiff NMB is a citizen of New Jersey and Defendant PRMG is a citizen of California. Furthermore, the amount in controversy exceeds $75,000. Accordingly,

NOTICE OF PETITION FOR REMOVAL OF ACTION PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441 AND 1446

this Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. sections 1331, 1332, 1441, and 1446, and Defendant PRMG has properly removed the State Court Action to this Court. Defendant PRMG reserves, and do not waive, any objections it may have to jurisdiction, venue, and any and all other defenses or objections to the action.

## VIII.   PRAYER FOR REMOVAL

WHEREFORE, Defendant PRMG prays that the State Court Action be removed from the Superior Court of California, County of Riverside, to the United States District Court for the Central District of California, Eastern Division.


DATE: August 23, 2024                FISHER & PHILLIPS LLP


                                           By:    /s/ Usama Kahf
                                                  Usama Kahf
                                                  Sean T. Kingston
                                                  Attorneys for Defendant
                                                  PARAMOUNT RESIDENTIAL
                                                  MORTGAGE GROUP, INC.

NOTICE OF PETITION FOR REMOVAL OF ACTION PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441 AND 1446

FP 51815445.6