# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Riverside on 07/12/2024 10:27 AM
Case Number CVRI2403987 0000098668461 - Jason B. Galkin, Executive Officer/Clerk of the Court By Carmen Mundo, Clerk

Christopher J. Kelly (SBN #264183)
RIMÔN, P.C.
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
Telephone: 609-299-1877
christopher.kelly@rimonlaw.com
*Attorneys for Plaintiff*

Attorneys for Plaintiff, NATIONWIDE
MORTGAGE BANKERS, INC.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF RIVERSIDE**

**RIVERSIDE HISTORIC COURTHOUSE**

| | |
|---|---|
| NATIONWIDE MORTGAGE BANKERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC., <br><br> Defendant. | Case No. CVRI2403987 <br><br> **COMPLAINT FOR DECLARATORY RELIEF AND REQUEST FOR EXPEDITED TRIAL DATE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 1062.3(A)** |

Nationwide Mortgage Bankers, Inc. ("NMB" or "Plaintiff"), by and through its undersigned attorneys, by way of Complaint seeking a declaratory judgment against Paramount Residential Mortgage Group, Inc. ("PRMG" or "Defendant"), states and alleges the following:

## I.     INTRODUCTION AND SUMMARY

1.      This controversy is set against the backdrop of 150 years of California jurisprudence prohibiting contracts by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind and recent amendments to California law regarding same.

2.      California has consistently and vigorously fostered protecting the right of individuals to pursue engagement in the profession, business, or trade of their choice. "[I]n 1872 California

settled public policy in favor of open competition[.]" *Edwards v. Arthur Andersen LLP*, (2008) 44 Cal.4th 937, 945. California Business and Professions Code Section 16600 provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

3.      Section 16600 protects "the important legal right of persons to engage in businesses and occupations of their choosing." *Morlife, Inc. v. Perry*, (1997) 56 Cal. App. 4th 1514, 1520 . Historically, any restraint on that ability is per se unlawful and void.

4.      Amendments to California Business and Professions Code Section 16600 et seq. went into effect on January 1, 2024.

5.      Those amendments, in part, set forth that the prohibition on non-competes "should be read broadly, in accordance with *Edwards v. Arthur Andersen LLP*, (2008) 44 Cal.4th. 937, to avoid the application of any noncompete agreement in an employment context, or any noncompete clause in an employment contract, no matter how narrowly tailored, that does not satisfy an exception in this chapter." California Business and Professions Code Section 16600(b)(1).

6.      California Business and Professions Code Section 16600.1, effective January 1, 2024, states, in relevant part:

(a) It shall be unlawful to include a noncompete clause in an employment contract, or to require an employee to enter a noncompete agreement, that does not satisfy an exception in this chapter.

(b)(1) For current employees, and for former employees who were employed after January 1, 2022, whose contracts include a noncompete clause, or who were required to enter a noncompete agreement, that does not satisfy an exception to this chapter, the employer shall, by February 14, 2024, notify the employee that the noncompete clause or noncompete agreement is void.
…
California Business and Professions Code Section 16600.1

7.      In addition, the legislature added California Business and Professions Code Section 16600.5 which states the following, in relevant part:

(a) Any contract that is void under this chapter is unenforceable regardless of where and when the contract was signed.

(b) An employer or former employer shall not attempt to enforce a contract that is void under this chapter regardless of whether the contract was signed and the employment was maintained outside of California.

(c) An employer shall not enter into a contract with an employee or prospective employee that includes a provision that is void under this chapter.

(d) An employer that enters into a contract that is void under this chapter or attempts to enforce a contract that is void under this chapter commits a civil violation.
…
California Business and Professions Code Section 16600.5.

8.      As a California employer, PRMG is bound to follow California law with regard to contracts it enters into with its employees regardless of where the employee works or resides, or where the agreement was signed, yet it has entered into agreements that seek to restrain individuals from engaging in a lawful profession, trade or business, has continued to attempt to enforce these agreements after Business and Professions Code Section 16600.5 made clear that they were unlawful and has failed to send notices to all employees subject to these agreements that they are invalid in accordance with California Business and Professions Code Section 16600.1.

9.      In this action, Plaintiff seeks declaratory relief in the form of a judgment proclaiming that (a) California is the proper forum to determine the enforceability of the restrictive covenants in question, California law governs the enforceability of those provisions, and the choice of law provision in the Restrictive Covenants Agreements (as defined below) are void and unenforceable; (2) the below referenced provisions in the Restrictive Covenants Agreements are void and unenforceable under California Business and Professions Code Section 16600 et seq.; and (3) NMB has the right to solicit PRMG employees and to employ PRMG's former employees should they desire to work at NMB and should NMB desire to hire them, and any action taken against NMB by PRMG as it relates to the unlawful provisions restricting employee ability to engage in a lawful profession, trade, or business referenced and found void and unenforceable constitutes an unlawful interference with NMB's employment or prospective employment relationships with former PRMG employees.

## II.      THE PARTIES

10.      PRMG is a corporation organized under the laws of the State of California and with its principal place of business at 1265 Corona Pointe Court, No. 300, Corona, California 92879.

11.      NMB is a corporation organized under the laws of the State of Delaware and with its principal place of business at 310A Main Street, Lebanon, New Jersey 08833.

### III.    JURISDICTION AND VENUE

12.    This Court has personal jurisdiction over the Defendant on the grounds that it is a corporation organized under the laws of the State of California with its principal place of business in Riverside County, California.

13.    In addition, Defendant solicits business from California residents; is authorized by the State of California to do business in California; conducts business within the State of California; employs personnel within the State of California; the contractual provision at issue were and are issued to individuals on behalf of the Defendant in the State of California; and this action involves important and fundamental public policies and statutory prohibitions of California that must be interpreted and enforced by a California Court.

14.    Venue in this Court is appropriate because PRMG maintains its principal place of business in Riverside County and conducts business therein.

### IV.    BACKGROUND FACTS

**A.    PRMG'S BUSINESS**

15.    PRMG is in the business of making home mortgage and home equity loans. This includes both original and refinanced mortgages.

16.    PRMG's headquarters and principal place of business is located in Corona, California located in Riverside County.

17.    Upon information and belief, PRMG has approximately two hundred and eighty-two offices nationwide.

**B.    PRMG'S RESTRICTIVE COVENANT AGREEMENTS WITH ITS EMPLOYEES**

18.    Upon information and belief, PRMG enters into agreements with certain of its employees entitled Employee Confidentiality, Non-Solicitation and Invention Assignment Agreement ("Restrictive Covenants Agreement").

19.    A true and correct copy of an example of the Restrictive Covenants Agreement is attached hereto as Exhibit A.

20.    The Restrictive Covenants Agreement contains provisions that are unlawful under

4

California law.

21. Paragraph 6(a)(a) of the Restrictive Covenants Agreement states:

a. Employee acknowledges and agrees that Employee's employment with the Company creates a relationship of confidence and trust with the Company with respect to all of the Company's Trade Secrets and Confidential Information. Therefore, all of the Company's Trade Secrets and Confidential Information shall forever be maintained in confidence by Employee and used by Employee only to such extent as may be necessary in the ordinary course of performing services for the Company under this Agreement. Employee shall not at any time either during Employee's term of employment or following the termination of Employee's employment with the Company (whether voluntary or involuntary), without the prior written consent of the Company, reveal, disclose, divulge, publish, disseminate, communicate, use or employ for the benefit of Employee or others (including without limitation, any corporation, partnership, company, business, group, association, firm, trust, venture or entity other than the Company or any person not then employed by the Company) any Trade Secrets and/or Confidential Information except as provided in this Agreement for as long as the information is maintained as confidential by the Company. Notwithstanding the foregoing, this Paragraph does not prohibit or limit the right of Employee to discuss, debate and communicate with other employees of the Company regarding Employee's workplace terms and conditions of employment, including wages, and does not prohibit or limit Employee's right to disclose details about alleged incidents or claims of discrimination, retaliation, or harassment.

a. Employee's agreement not to use Trade Secrets and/or Confidential Information also includes an agreement that Employee will not, directly or indirectly, use the Company's Trade Secrets and/or Confidential Information to: (i) identify existing clients of the Company for Employee's own personal benefit or the benefit of any other firm or entity; (ii) facilitate the solicitation, for Employee's personal benefit or the benefit of any other firm or entity, of any existing or prospective clients of the Company that Employee serviced or solicited or about whom Employee otherwise gained Trade Secrets and/or Confidential Information during Employee's employment with the Company; and/or (iii) otherwise unfairly compete with the Company.

*See* Exhibit A at Page 6, Paragraph 6(a)(a).

22. Paragraph 6(a)(b) of the Restrictive Covenants Agreement states:

b. Covenant Not to Solicit the Company's Clients After Termination of Employment Through the Use of the Company's Trade Secrets and/or Confidential Information. Employee agrees that, for as long as the Trade Secrets qualify as a trade secret under applicable law and with respect to Confidential Information for two (2) years following termination of Employee's employment with the Company for any reason, whether voluntary or involuntary, Employee shall not, directly or indirectly, use any of the Company's Trade Secrets and/or Confidential Agreement to solicit or attempt to solicit any business from any of the Company's clients for the purposes of providing products and/or services that are competitive with those provided by the Company. The Company reasonably believes, and Employee expressly acknowledges and agrees that, the Company's Confidential Information will remain valuable and confidential for at least two (2) years following termination of Employee's employment.

*See* Exhibit A at Page 6, Paragraph 6(a)(b).

23. As set forth above, the Restrictive Covenants Agreement contains grossly overbroad

and void confidentiality and trade secret provisions that operate as a de facto non-competition provisions.

24.    The definitions of "Trade Secrets" and "Confidential Information" are extremely overbroad, go well beyond the definitions of trade secrets under California and Federal law, and have the effect of restraining the employees from engaging in a lawful profession, trade or business. *See* Exhibit A at Pages 2-3, Paragraph 2(a) and (b).

25.    PRMG also incorporates these overbroad and unlawful definitions of "Trade Secrets" and "Confidential Information" into a customer non-solicitation provision that purports to bar PRMG employees, for two (2) years post-employment, from using "Trade Secrets" and/or "Confidential Information" to solicit clients or otherwise take them away from PRMG. These overly broad restrictive provisions operate as de facto non-competition provisions and are, therefore, in violation of California Business and Professions Code Section 16600 et seq.

26.    Paragraph 8 of the Restrictive Covenants Agreement states, in relevant part:

…during Employee's employment with the Company and for one (1) year following separation or cessation of Employee's employment with the Company for any reason, whether voluntary or involuntary, Employee will not, in any capacity (including as an employee, employer, consultant, agent, principal, partner, corporate officer, board member, director, or in any other individual or representative capacity), for Employee's benefit and/or the benefit of any third party, engage in any of the following severable activities: (i.) Solicit, encourage or induce any "Clients" or "Prospective Clients" to purchase or obtain "Products and/or Services" (ii.) Accept "Products and/or Services" business from or cause or authorize "Products and/or Services" business to be accepted by any "Clients" or "Prospective Clients" (as these terms are defined below). (iii.) Perform, sell or provide "Products and/or Services" to any "Clients" or "Prospective Clients" (as these terms are defined below).

*See* Exhibit A at Page 7-8, Paragraph 8.

27.    Paragraph 11 of the Restrictive Covenants Agreement states:

11. **Non-Recruiting Covenant**. Employee acknowledges and agrees that the Company has invested substantial time and effort in assembling its present personnel, consultants, and independent contractors, and that, as a result of Employee's employment with the Company, Employee will become privy to and familiar with the Company's personnel, consultants, independent contractors, and recruiting practices and strategies and with the Company's human capital and talent. Therefore, to the extent permitted by applicable law, Employee agrees that during Employee's employment with the Company and for one (1) year following Employee's termination of employment with the Company, whether voluntary or involuntary, Employee will not directly or indirectly solicit or attempt to solicit, recruit or attempt to recruit, or otherwise aid or abet any third party in soliciting or recruiting, or induce or attempt to induce, any person who is at the time of being recruited or solicited a current employee,

6

consultant or independent contractor of the Company with whom Employee worked or had contact, whom Employee supervised or managed, or about whom Employee received or accessed any Confidential Information or Trade Secrets at any time during the last two (2) years of Employee's employment with the Company, or induce or attempt to induce any such employee, consultant or independent contractor of the Company to terminate or cease employment or other relationship with the Company or to work for or with any business that competes with the Company.

*See* Exhibit A at Pages 10-11 Paragraph 11.

28.     Finally, Paragraph 27 of the Restrictive Covenants Agreement provides:

27. Choice of Law; Jurisdiction. All issues and questions concerning the construction, validity, enforcement, and interpretation of this Agreement shall be governed by, and construed in accordance with, the laws of the state in which Employee worked for or was employed by the Company at the time this Agreement is executed by Employee, without giving effect to any choice of law or conflict of law rules or provisions (whether of this state or any other jurisdiction) that would cause the application of the laws of any other jurisdiction. Subject to any applicable arbitration agreement, each of the parties irrevocably consents to the exclusive personal jurisdiction of the state and federal courts located in the foregoing state for any action or dispute arising out of or relating to this Agreement, except that in actions seeking to enforce any order or any judgment of such state or federal courts, such personal jurisdiction shall be non-exclusive.

*See* Exhibit A at Page 6, Paragraph 6(a).

29.     If the choice of law provision above was enforceable, it would have the effect of precluding employees who live elsewhere from seeking to enforce California law against their California employer as expressly permitted by California Business and Professions Code Section 16600.5 which permits individuals to file actions and recover attorneys' fees in such cases. See California Business and Professions Code Section 16600.5(e)("(1) An employee, former employee, or prospective employee may bring a private action to enforce this chapter for injunctive relief or the recovery of actual damages, or both. (2) In addition to the remedies described in paragraph (1), a prevailing employee, former employee, or prospective employee in an action based on a violation of this chapter shall be entitled to recover reasonable attorney's fees and costs.").

### C.     NMB HIRES FORMER PRMG EMPLOYEES

30.     NMB is also in the business of making home mortgage and home equity loans. This includes both original and refinanced mortgages.

31.     NMB is a competitor of PRMG.

32.     In or around May of 2022, NMB hired a number of former PRMG employees who

1   had resigned from PRMG ("Unlawfully Restricted Employees").

2       33.    PRMG claims that each of the Unlawfully Restricted Employees executed a

3   Restrictive Covenants Agreement.

4       34.    PRMG sent correspondence to NMB demanding that "NMB immediately refrain

5   from: (1) Soliciting and recruiting, either directly or indirectly, any PRMG employees; and (2)

6   Inducing PRMG employees to terminate or cease employment with PRMG; and (3) Soliciting all

7   past, present, or future PRMG customers….". *See* Letter from PRMG to NMB dated May 18, 2022,

8   page 3, a true and correct copy of which is attached as Exhibit B to this Complaint (emphasis

9   added).

10      35.    These demands by PRMG are on their face anticompetitive in nature and concerned

11  with blanketly restricting its employees from engaging in their lawful profession. The letter did not

12  demand that NMB cease soliciting employees of PRMG or PRMG customers by using PRMG trade

13  secrets, for example, but rather broadly demanded that NMB not compete with PRMG in the market

14  for customers or in the labor market for employees in general in an effort to stifle its employees'

15  ability to seek alternative employment when they were unhappy with PRMG. PRMG made these

16  demands under the guise of claims of tortious interference with PRMG's contracts with its former

17  employees.

18      36.    PRMG is not concerned with protecting trade secrets where it is attempting to

19  prohibit its employees from soliciting all past, present or future customers of PRMG without

20  limitation. Certainly, there can be no basis for restricting employees from soliciting potential future

21  customers who had no connection with PRMG at the time the employees were employed at PRMG.

22  Again, these outrageous demands by PRMG were meant to threaten its former employees, and by

23  extension NMB, into submission and scare them into not competing with PRMG at all by way of

24  preventing the individuals from engaging in their lawful profession.

25      37.    NMB responded to PRMG's May 18, 2022 letter on May 31, 2022 and addressed the

26  unlawfulness of the Restrictive Covenants Agreement as it applied to the former PRMG employees

27  from Indiana who were then in question. *See* generally, Letter from NMB to PRMG dated May 31,

28  2022, a true and correct copy attached as Exhibit C to this Complaint.

COMPLAINT FOR DECLARATORY RELIEF AND REQUEST FOR EXPEDITED TRIAL DATE PURSUANT TO
CODE OF CIVIL PROCEDURE SECTION 1062.3(A)

38.     In addition, NMB informed PRMG that complying with PRMG's demands could subject NMB to civil and criminal liability under antitrust laws due to the broad and overreaching nature of those demands. *Id*.

39.     Finally, NMB advised PRMG that it did not intend to use any of PRMG's trade secrets or confidential information and would not do so and also agreed that it would instruct any former PRMG employees whom NMB hired not to do so. *Id*.

40.     Rather than admit that the provisions of the Restrictive Covenants Agreements in question were unlawful, or engage in further discussions on the issue, PRMG doubled-down and engaged in an effort to forum shop by filing an action against NMB in the United Stated District Court for the District of New Jersey bringing claims for tortious interference with contract and employee piracy under New Jersey law even though none of the Unlawfully Restricted Employees, who were the basis for the action, were located in New Jersey.

41.     These actions demonstrate that PRMG was not interested in protecting its confidential information, but rather wanted to restrain the Unlawfully Restricted Employees from working for anyone in the industry other than PRMG, and would find a convenient forum and advantageous governing law to do so, even if that forum and law were unrelated to the employees in question, or PRMG's location.

42.     PRMG claims that the Unlawfully Restricted Employees have violated provisions of their Restrictive Covenants Agreements.

43.     PRMG also claims that NMB tortiously interfered with the Unlawfully Restricted Employees' Restrictive Covenants Agreements by hiring those employees and permitting them to work in a lawful profession, trade, or business.

44.     PRMG has sought, among other things, A permanent injunction, enjoining NMB, directly or indirectly, and whether alone or in concert with others, from:

        (i)     soliciting, diverting away, or attempting to solicit or divert away any PRMG customer; and

        (ii)     soliciting any PRMG employee to leave employment with PRMG or to act in any way in a manner contrary to PRMG's interests or such employee's duty of

9

COMPLAINT FOR DECLARATORY RELIEF AND REQUEST FOR EXPEDITED TRIAL DATE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 1062.3(A)

loyalty to PRMG; and

(iii)    retaining, using, possessing, disclosing to any person, or facilitating the use of or assisting others to use, any PRMG data trade secrets, and confidential information.

45.    PRMG seeks to effectively deprive the Unlawfully Restricted Employees, and for that matter all other PRMG employees who have signed similar Restrictive Covenants Agreements, of their right to work for any other employer in the industry in which they have acquired exceptional experience and expertise.

46.    PRMG seeks to bar NMB from employing the Unlawfully Restricted Employees and to recover damages from NMB for employing the Unlawfully Restricted Employees based on the Restrictive Covenants Agreements which are unlawful under California law.

47.    Enforcing, threatening to enforce, and attempting to enforce the non-competition provisions and refusing to recognize the application of California law constitute an unlawful restriction on the Unlawfully Restricted Employees in the exercise of their livelihood and also upon NMB's right to hire such employees.

48.    PRMG's conduct unlawfully restrains PRMG employees from accepting employment elsewhere, including with NMB, and unlawfully seeks to chill NMB from recruiting the best talent without threat of litigation.

49.    PRMG's conduct is in violation of California Business and Professions Code Section 16600 et seq. including the amendments to same that became effective just a few months ago on January 1, 2024.

50.    California Business and Professions Code Section 16600.1 required that PRMG notify its employees that the unlawful provisions of their agreements were void on or before February 14, 2024.

51.    Upon information and belief, PRMG did not send the required notices to all of its employees who had been subject to the Restrictive Covenants Agreement, including the Unlawfully Restricted Employees.

52.    PRMG continues to attempt to enforce the unlawful provisions of the Restrictive

10

Covenant Agreements despite the language of the recent amendments making clear that it is unlawful for PRMG to do so.

53.    Upon information and belief, PRMG is using its non-compete agreements to attempt to intimidate its employees and former employees and deter them from seeking employment at any competitor in violation of the fundamental public policy reflected in California law preventing restrictions on the free movement of labor and employees' right to work where they choose as well as to intimidate its competitors, including NMB, from hiring its former employees, which limits unlawfully seeks to limit NMB's ability to recruit the best talent.

**FIRST CAUSE OF ACTION**
**Declaratory Relief**

54.    Plaintiff hereby incorporates by reference all of the foregoing allegations as if set forth fully herein.

55.    An actual and justiciable controversy has arisen and now exists between Plaintiff, on the one hand, and Defendant, on the other hand, concerning their respective rights, duties, future obligations and legal exposures pursuant to certain provisions of the Restrictive Covenants Agreements between PRMG and the Unlawfully Restricted Employees who were hired by NMB.

56.    PRMG's post-employment non-competition provisions with the Unlawfully Restricted Employees and, upon information and belief, other PRMG employees and former employees, unlawfully restrains them from pursuing lawful employment with NMB and doing business with customers and potential customers who they may or may not have done business with at PRMG.  These provisions also seek to unlawfully restrict NMB from recruiting and employing these employees and from engaging in lawful competition with PRMG

57.    Plaintiff contends that the veiled non-competition provisions in the Restrictive Covenants Agreements and as referenced in Paragraphs 22, 23, 25, 27, 28 and 29 of this Complaint are restraints of substantial character and, regardless of what form they are presented,  constitute unlawful restraints on trade in violation of California Business & Professions Code Section 16600 et seq. and California's long recognized and fundamental public policy against such provisions. *See*

COMPLAINT FOR DECLARATORY RELIEF AND REQUEST FOR EXPEDITED TRIAL DATE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 1062.3(A)

1  *Edwards v. Arthur Andersen LLP*, (2008) 44 Cal.4th 937, 945-46.

2      58.      The inclusion of the unlawful provisions invalidates the agreements in their entirety,

3  including the choice of law provision.

4      59.      Plaintiff contends that California law, specifically California Business & Professions

5  Code Section 16600 et seq., applies to the purported non-competition provisions and to NMB's

6  hiring of the Unlawfully Restricted Employees.

7      60.      Plaintiff contends the non-competition provisions are void and unenforceable.

8      61.      Plaintiff additionally contends that the choice of law clause found in the agreements

9  serve to restrain trade and thus constitute an unlawful restraint on trade in violation of California

10  Business & Professions Code Section 16600 et seq., and are thus void and unenforceable.

11      62.      Defendant disputes Plaintiff's contentions, and instead contends that the non-

12  competition provisions, as well as the forum selection and choice of law provisions found in the

13  agreements, are valid and enforceable. Defendant has sought to enforce said provisions found in the

14  agreements against the Unlawfully Restricted Employees and Plaintiff by, among other things, (1)

15  sending letters to the Unlawfully Restricted Employees cautioning them to abide by their obligations

16  under the void Restrictive Covenants Agreements; (2) sending a cease and desist letter to NMB

17  regarding its hiring the Unlawfully Restricted Employees; and (2) seeking to judicially enforce such

18  provisions through an action initiated in the United States District Court for the District of New

19  Jersey against NMB and other actions against other former PRMG employees.

20      63.      A judicial declaration is necessary and appropriate at this time under the

21  circumstances in order that Plaintiff and Defendant may ascertain their respective rights, duties and

22  future obligations under the Restrictive Covenants Agreements as NMB has established

23  employment relationships with certain Unlawfully Restricted Employees and wishes to continue

24  those relationships and may also wish to hire additional current or former PRMG employees.

25      64.      Plaintiff seeks judicial declarations from the Court as specified in the Prayer for

26  Relief below.

27  **<u>PRAYER FOR RELIEF</u>**

28  WHEREFORE, Plaintiff prays for relief against Defendant as follows:

12

1.    For a judicial declaration from this Court that California Business and Professions Code 16600 et seq. applies to the non-competition provisions at issue here, that California is the proper forum to determine the enforceability of the provisions, that California law governs their enforceability, and that the choice of law provision in the Restrictive Covenants Agreement is void and unenforceable;

2.    For a judicial declaration that the unlawful non-competition provisions, and provisions purportedly protecting confidential information and trade secrets, including, but not limited to, the referenced provisions of the Restrictive Covenants Agreement set forth in Paragraphs 22, 23, 25, 27, 28 and 29 of this Complaint, are void and invalid under California Business and Professions Code Section 16600 et seq.;

3.    For a judicial declaration that NMB has a right to solicit and employ the former PRMG employees.

4.    For costs of suit incurred herein, including reasonable attorneys' fees where authorized by contract, statute or other law, including but not limited to, California Code of Civil Procedure Section 1021.5; and

5.    For such other and further relief as this Court deems just and proper.

Dated:  July 12, 2024                              RIMÔN, P.C.

By: _____
Christopher J. Kelly

Attorneys for Plaintiff, NATIONWIDE MORTGAGE BANKERS, INC.

COMPLAINT FOR DECLARATORY RELIEF AND REQUEST FOR EXPEDITED TRIAL DATE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 1062.3(A)

# EXHIBIT A

## EMPLOYEE CONFIDENTIALITY, NON-SOLICITATION, AND INVENTIONS ASSIGNMENT AGREEMENT

This Employee Confidentiality, Non-Solicitation, and Inventions Assignment Agreement (referred to as the "Agreement") is entered into by and between Paramount Residential Mortgage Group and its successors, assigns, subsidiaries, and affiliated companies (collectively referred to as the "Company") and the employee whose name and signature appear below (referred to as the "Employee") as of the date indicated below, in regard to the following facts:

    A.  WHEREAS, as part of Employee's employment with the Company, Employee has or will be exposed to and/or provided with trade secrets (hereinafter referred to as "Trade Secrets") and proprietary and confidential information (hereinafter referred to as "Confidential Information") relating to the operation of the Company's business and its clients; and

    B.  WHEREAS, the Company wishes to protect its Trade Secrets and Confidential Information from unauthorized possession, use or disclosure, and to protect itself from unfair competition; and

    C.  WHEREAS, Employee acknowledges that a part of the consideration Employee is providing the Company in exchange for Employee's employment, continued employment with the Company, being provided access to Confidential Information and/or Trade Secrets, and/or receipt of additional consideration to which Employee was not previously entitled and the sufficiency of which Employee acknowledges, is Employee's agreement to maintain the secrecy of the Company's Trade Secrets and Confidential Information in the manner provided herein and to abide by the restrictive covenants set forth below, which I acknowledge and agree are reasonably limited in scope and tailored to protect the Company's legitimate and legally protectable business interests.

NOW, THEREFORE, in consideration of these promises and of the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereunto agree as follows:

1. **Duty of Loyalty.** Employee owes the Company a fiduciary duty of loyalty. While employed by the Company, Employee agrees at all times to devote Employee's best efforts to the business of the Company, to perform conscientiously all duties and obligations required or assigned, and not to usurp, for personal gain, any opportunities in the Company's line of business. During Employee's employment with the Company, Employee shall promptly and fully provide the Company with all information, ideas, improvements and recommendations regarding the Company's business, whether or not protectable by patent, copyright or other proprietary right, and whether or not they are made, conceived or reduced to practice during Employee's employment with the Company, or using the Company's facilities or data, of which Employee has knowledge, that could reasonably be considered to benefit the Company. Employee shall not usurp, for personal gain or the benefit of any other third party, information and/or information which could reasonably be considered to benefit the Company. Examples of conduct that constitutes a breach of Employee's duty of loyalty if engaged in during Employee's employment with the Company include, but are not limited to:

    a. Soliciting clients of the Company for the personal benefit of Employee or any other third party;

    b. Performing any work or services outside of the Company that competes or interferes with Employee's work at the Company or results in usurping or interfering with any prospective business opportunity;

    c. Taking a second or third job that results in diminishing, inhibiting, limiting or negatively

impacting Employee's ability to effectively and proficiently complete job duties for the Company and to be available during normal business hours during which Employee's services are regularly scheduled or otherwise needed at the Company (Employee remains free to work anywhere else as long as such work does not compete with the Company's business and does not conflict with or inhibit Employee's ability to perform work for the Company);

d. If Employee is an hourly non-exempt employee, doing or attending to non-Company-related work or personal business while on the clock at the Company and not during a meal or rest break;

e. Discussing with any client whether the client would follow or continue to work with Employee if/when Employee leaves the Company; and

f. Taking or retaining client information at any time without the client's authorization and/or upon termination of Employment.

2. **Definitions.**

a. Definition of "Trade Secrets." Employee acknowledges and agrees that, through Employee's employment with the Company, Employee has or will be exposed to and/or provided with the Company's Trade Secrets. "Trade Secrets" mean information, including a formula, pattern, compilation, program, device, method, technique or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons or entities who can obtain economic value from its disclosure or use and (2) is the subject of efforts that are reasonable under the circumstances to maintain it secrecy. The Company's Trade Secrets include, but are not limited to, the following: "Confidential Information" as defined below that also qualifies as a trade secret under applicable state or federal law; the Company's files and records regarding clients, prospective clients, referral sources, independent contractors, consultants, and vendors, such as contact information, terms of contracts, transactional history, and special needs that are not publicly disclosed or generally known to competitors; client lists and compilations of data about clients; prospective client lists and compilations of data about prospective clients; "leads" lists and compilations of data about leads; client profiles, needs, specifications, account history, habits, correspondence, contract terms, contract expiration dates, and rates offered; information and documents pertaining to analyses and forecasts of operational capacity and readiness to meet client needs; business plans and strategy; non-public information and documents regarding the Company's products and services (including, but not limited to, manuals, plans, flowcharts, specifications, and other materials containing information that may be useful to a competitor); custom forms and documents created for internal use in conducting Company business; software developed by or for the benefit of the Company and related data source code and programming information (whether or not patentable or registered under copyright or similar statutes); the methods and systems used by the Company in soliciting, marketing, selling and providing its products and services to its clients; financial and accounting information, such as cost information, personnel costs, budgets, estimating processes, profit margins, profit and revenue targets, forecasts, and results, prices, pricing methodologies, billing information, and revenues from client accounts and transactions; unpublished financial statements; sales and marketing plans, strategies, programs, methods, and techniques; and research and development regarding current and/or anticipated business opportunities. Employee acknowledges and agrees that the Company's Trade Secrets are not generally known to the public or to the Company's competitors, were developed or compiled at significant expense by the Company over an extended period of time, are the subject

of the Company's reasonable efforts to maintain their secrecy, and that the Company derives significant independent economic value by keeping its Trade Secrets a secret.

b. Definition of "Confidential Information." Employee acknowledges and agrees that, through Employee's employment with the Company, Employee has or will be exposed to and/or provided with the Company's Confidential Information. "Confidential Information" means all information belonging to the Company, whether reduced to writing or in a form from which such information can be obtained, translated or derived into reasonably usable form, and whether the information is simply in Employee's head, that has been provided to Employee during Employee's employment with the Company and/or Employee has gained access to while employed by the Company and/or was developed by Employee in the course of Employee's employment with the Company, that is proprietary and confidential in nature. The Company's Confidential Information includes, but is not limited to, information believed by the Company to be a Trade Secret that ultimately does not qualify as such under applicable state or federal law but nonetheless was maintained by the Company as confidential, as well as other information maintained as confidential by the Company, including, but not limited to: client and prospective client information (including, but not limited to, the identities of the Company's clients, client lists, prospective client lists, contact information, rate and pricing information, revenues and commissions from client transactions, rates offered, borrowing habits and patterns, contract terms, contract expiration dates, client proposals, negotiation histories, billing histories, personal and private information and data, correspondence, and any information about specific clients' needs, pricing or service preferences, likes, and dislikes); information identifying persons and entities who previously engaged in any business dealings or transactions with the Company; information concerning the Company's independent contractors, subcontractors, consultants, vendors, and referral sources (including lists of all the foregoing); plans and projections for business opportunities for new or developing business (whether pursued or not), including research and development of products and services that have not yet been announced or launched by the Company; pricing and rate information and cost data; profit margins; cost and price estimating methods and strategies; financial policies and procedures; training plans and programs; research and development plans or projects, data and reports; computer materials such as programs, instructions, source and object code, and printouts; formulas; inventions, developments, and discoveries; data compilations; unpublished financial statements, budgets, and projections; information regarding the skills of employees or consultants of the Company; the protected health information of individuals, including employees and consultants of the Company; personnel files and employment-related records of the Company's current and former employees (including, but not limited to, information related to the hiring, recruitment, retention, and separation of the Company's current and former employees, as well as information related to their job duties, assignments, performance, discipline, promotions, compensation, benefits, leaves of absence, and medical files); the Company's organizational structure and internal correspondence regarding personnel changes and internal reporting structures; sales and marketing strategies, forecasts, and techniques; the methods and systems used by the Company in soliciting, selling and providing its services and/or products to its clients; and the identities of the Company's referral sources, and all information about those relationships. Additionally, Confidential Information includes private information of and/or about the Company's clients that the Company collects, compiles and maintains, including without limitation credit information, social security numbers, addresses, phone numbers, and other private data, whether or not the Company has a legal obligation to safeguard the privacy of such information under applicable state and federal law.

c. Labeling of Documents. Documents, materials, and devices that contain the

Company's Trade Secrets and Confidential Information may or may not be marked as "Confidential," "Proprietary," "Secret" or with other words or markings of similar meaning, and the failure of the Company or any other party to make such notations upon the physical embodiments of any Trade Secrets and/or Confidential Information shall not affect the status of such information as Trade Secret and/or Confidential Information.

d. Information Not Included Within the Definition of Trade Secrets and/or Confidential Information. The Company's Trade Secrets and Confidential Information do not include: (1) any information that is already in the public domain or becomes available to the public through no breach by Employee of this Agreement; (2) any information that was lawfully in Employee's possession prior to disclosure to Employee by the Company; (3) any information that is lawfully disclosed to Employee by a third party without any obligations of confidentiality attaching to such disclosure; (4) any information that is developed by Employee entirely on Employee's own time without the Company's equipment, supplies or facilities and does not relate at the time of conception to the Company's business or actual or demonstrably anticipated research or development of the Company; or (5) any information or details relating to a claim of discrimination, retaliation or harassment.

3. **Company Property.** Employee acknowledges and agrees that all Trade Secrets and Confidential Information developed, created or maintained by Employee, alone or with others, while Employee is employed by the Company, shall remain at all times the sole property of the Company, regardless of where such Trade Secrets and Confidential Information may be stored or maintained by Employee, including, without limitation, on any personal electronic or mobile device owned by Employee. Employee further acknowledges and agrees that all contact information of and all communications (including emails, text messages, and other private electronic messages) with the Company's clients, prospective clients, referral sources, and vendors that Employee may come to possess during Employee's employment with the Company shall remain the sole property of the Company even if Employee stores such information on Employee's personal cell phone or electronic device, and Employee shall not take and fail to return such information after termination of Employee's employment with the Company for any reason. Employee will be in breach of this Paragraph if Employee retains any such information on his/her personal cell phone or personal email account after Employee's employment with the Company has ended.

4. **Safeguarding of Company's Property & Information.**

a. Employee is strictly prohibited, at all times during Employee's employment with the Company except with prior written approval of the Company's President, from forwarding from Employee's Company email account to Employee's personal email account(s) any emails or documents containing any Company Trade Secrets and/or Confidential Information or any other business documents or communications (including any email that contains any client name or client-related information), as well as from copying, transferring or uploading to Employee's personal Cloud-based or online storage accounts such as a personal Dropbox, iCloud or Google Docs account any documents containing any Company Trade Secrets and/or Confidential Information.

b. Employee is also strictly prohibited, at all times during Employee's employment with the Company, except (a) where doing so is part of Employee's job at the Company or necessary for performance of any job duties, (b) where Employee has previously been permitted do so by Employee's manager, or (c) with the express authorization of the Company, and then only for the sole benefit of the Company during Employee's employment, from removing from the premises or computer systems of the Company

any physical item or document, or any written, electronic or recorded copy of any physical item or document, containing or embodying any Trade Secrets and/or Confidential Information or any other business documents or communications (including any email that contains any client name or client-related information), including without limitations the same in electronic or digital form.

c.  Employee agrees to not leave any of the Company's Trade Secrets and Confidential Information unattended in any area, whether on or off the Company's premises, where leaving such information unattended creates a risk that the information may be accessed or acquired by any individual who is not authorized to view or access the Company's Trade Secrets and Confidential Information. Employee will exercise due diligence and reasonable care when handling, maintaining, transferring, disposing or storing any Trade Secrets and/or Confidential Information so as to not risk unauthorized use or disclosure of the information or violate any federal or state privacy laws. Employee agrees to fully and completely comply with any and all security and privacy policies and directives of the Company. Employee will immediately give notice to the Company of any unauthorized use or disclosure of Trade Secrets and/or Confidential Information and will assist the Company in remedying any such unauthorized use or disclosure.

5.  **Company-Issued or Subsidized Electronic Devices.** If Employee is issued any electronic device by the Company such as a smart phone, iPad, laptop computer, or external hard drive, if the Company has fully reimbursed Employee for the purchase of an electronic device, or if the Company is otherwise subsidizing the cost of Employee's use of any personally owned electronic device, Employee agrees that the following shall govern Employee's use, access, and possession of such devices:

a.  Employee has no right to privacy with respect to any data that is stored on any Company-owned device (which includes any device Employee purchased and was fully reimbursed for by the Company ), and no right to or expectation of privacy with respect to any Company-related data that is stored on any other device as the Company has the right to access all such devices at any time to retrieve or delete all Company-related data;

b.  Employee's use of the device shall be in accordance with the Employee Handbook policies pertaining to use of Company equipment, computers, networks and systems;

c.  Employee will not use the device in any circumstances in which use of the device may distract Employee or others from any business task that requires close attention or otherwise may create an unsafe condition;

d.  Employee will not use the device in a manner that violates any applicable federal, state and local laws such as driving laws;

e.  Employee will return all Company-owned devices to the Company when requested to do so by the Company and/or immediately upon termination of Employee's employment with the Company for any reason;

f.  as soon as Employee begins to consider leaving the Company or Employee realizes his/her employment with the Company has or will soon come to an end, Employee will not wipe or delete or cause any data to be wiped or deleted from any Company-owned device before returning the device to the Company, including any data Employee considers to be personal;

g.  as soon as Employee's employment with the Company ends for any reason, or as

soon as the Company requests that Employee return the Company-owned device for any reason, Employee no longer has authorization or consent from the Company to access the Company-owned device and Employee will not access such device for any reason before returning it to the Company; and

h. before Employee returns the Company-owned device to the Company, whether upon request by the Company to return it or termination of Employee's employment, if Employee has stored any data on the device that Employee considers to be personal, Employee will not access or attempt to access the device to retrieve such personal data except with the written consent of the Company or in the presence of an authorized Company representative.

6. **Covenant Not to Use, Publish or Disclose the Company's Trade Secrets and/or Confidential Information During and After Termination of Employment.**

a. Employee acknowledges and agrees that Employee's employment with the Company creates a relationship of confidence and trust with the Company with respect to all of the Company's Trade Secrets and Confidential Information. Therefore, all of the Company's Trade Secrets and Confidential Information shall forever be maintained in confidence by Employee and used by Employee only to such extent as may be necessary in the ordinary course of performing services for the Company under this Agreement. Employee shall not at any time either during Employee's term of employment or following the termination of Employee's employment with the Company (whether voluntary or involuntary), without the prior written consent of the Company, reveal, disclose, divulge, publish, disseminate, communicate, use or employ for the benefit of Employee or others (including without limitation, any corporation, partnership, company, business, group, association, firm, trust, venture or entity other than the Company or any person not then employed by the Company) any Trade Secrets and/or Confidential Information except as provided in this Agreement for as long as the information is maintained as confidential by the Company. Notwithstanding the foregoing, this Paragraph does not prohibit or limit the right of Employee to discuss, debate and communicate with other employees of the Company regarding Employee's workplace terms and conditions of employment, including wages, and does not prohibit or limit Employee's right to disclose details about alleged incidents or claims of discrimination, retaliation, or harassment.

a. Employee's agreement not to use Trade Secrets and/or Confidential Information also includes an agreement that Employee will not, directly or indirectly, use the Company's Trade Secrets and/or Confidential Information to: (i) identify existing clients of the Company for Employee's own personal benefit or the benefit of any other firm or entity; (ii) facilitate the solicitation, for Employee's personal benefit or the benefit of any other firm or entity, of any existing or prospective clients of the Company that Employee serviced or solicited or about whom Employee otherwise gained Trade Secrets and/or Confidential Information during Employee's employment with the Company; and/or (iii) otherwise unfairly compete with the Company.

b. **Covenant Not to Solicit the Company's Clients After Termination of Employment Through the Use of the Company's Trade Secrets and/or Confidential Information.** Employee agrees that, for as long as the Trade Secrets qualify as a trade secret under applicable law and with respect to Confidential Information for two (2) years following termination of Employee's employment with the Company for any reason, whether voluntary or involuntary, Employee shall not, directly or indirectly, use any of the Company's Trade Secrets and/or Confidential Agreement to solicit or attempt

to solicit any business from any of the Company's clients for the purposes of providing products and/or services that are competitive with those provided by the Company. The Company reasonably believes, and Employee expressly acknowledges and agrees that, the Company's Confidential Information will remain valuable and confidential for at least two (2) years following termination of Employee's employment.

c. Notwithstanding any provisions in this agreement or Company policy applicable to the unauthorized use or disclosure of trade secrets, Employee is hereby notified that, pursuant to the Defend Trade Secrets Act as contained in 18 U.S.C. § 1833, Employee cannot be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law. Employee also may not be held so liable for such disclosures made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, individuals who file a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to court order provided the Employee's actions are consistent with 18 U.S.C. § 1833.

7. **Third Party Information.** Employee understands that the Company has in the past received, and in the future may receive from third parties (such as clients), confidential or proprietary information (hereinafter "Third Party Information") subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. During and after Employee's employment with the Company, Employee will honor all such agreements to protect Third Party Information and will keep all such information received by Employee in the strictest confidence and will not disclose it to anyone (other than Company personnel who need to know such information in connection with their work for the Company) or use it, except in connection with Employee's work for the Company. Employee will direct any questions regarding the continuing existence of any such Third Party Information to the Company prior to disclosing or using any such information. Notwithstanding the foregoing, this Paragraph is not intended to have the purpose or effect of concealing details about alleged incidents or claims of discrimination, retaliation, or harassment.

8. **Client Non-Solicitation Covenant**

a. In order to further prevent the unauthorized disclosure and use of the Company's Trade Secrets and Confidential Information and to protect the Company's legitimate business interests and its substantial relationships with its clients, Employee agrees that, during Employee's employment with the Company and for one (1) year following separation or cessation of Employee's employment with the Company for any reason, whether voluntary or involuntary, Employee will not, in any capacity (including as an employee, employer, consultant, agent, principal, partner, corporate officer, board member, director, or in any other individual or representative capacity), for Employee's benefit and/or the benefit of any third party, engage in any of the following severable activities:

i. Solicit, encourage or induce any "Clients" or "Prospective Clients" to purchase or obtain "Products and/or Services" (as these terms are defined below).

ii. Accept "Products and/or Services" business from or cause or authorize

"Products and/or Services" business to be accepted by any "Clients" or "Prospective Clients" (as these terms are defined below).

  iii.  Perform, sell or provide "Products and/or Services" to any "Clients" or "Prospective Clients" (as these terms are defined below).

As indicated below, this post-employment non-solicitation covenant may or may not apply or may be limited in certain ways depending on which state's law governs disputes arising out of this Agreement.

b.  For purposes of this Agreement, "**Products and/or Services**" means any products or services that are competitive with those offered or provided by the Company to its clients, including products or services that are the same as or substantially similar to those offered or provided by the Company.

c.  For purposes of this Agreement, "**Clients**" of the Company are individuals

  i.  that as of the date of the separation of Employee's employment were current clients with a pending or ongoing transaction or other contractual or business relationship with the Company or whose transaction with the Company closed in the last six months, and

  ii.  with whom Employee had any contact, business or other dealings (whether by phone, email, in person or other method of communication), over whom Employee had special influence, to whom Employee provided or sold Products and/or Services, which Employee solicited on behalf of the Company, and/or about whom Employee received or accessed Confidential Information and/or Trade Secrets of the Company, in the one (1) year preceding the termination of Employee's employment with the Company.

d.  For purposes of this Agreement, "**Prospective Clients**" are individuals

  i.  whom Employee actively solicited, attempted to solicit or was planning and preparing to solicit on behalf of the Company for the purpose of providing or selling Products and/or Services but who had not transacted any business with the Company in the one (1) year preceding the termination of Employee's employment with the Company, and

  ii.  with whom Employee had any contact, business or other dealings (whether by phone, email, in person or other method of communication), over whom Employee had special influence, to whom Employee provided or sold Products and/or Services, which Employee solicited on behalf of the Company, and/or about whom Employee received or accessed Confidential Information and/or Trade Secrets of the Company, in the one (1) year preceding the termination of Employee's employment with the Company

e.  _Employees in MT and ND Only_: Notwithstanding the foregoing, and if and only if at the time Employee executed this Agreement Employee was working for the Company in Montana or North Dakota, or if a court or arbitrator deems that the law of any of these states shall govern disputes arising out of this Agreement, then the post-employment client non-solicitation covenant contained in this Paragraph 8 shall not apply to Employee.

f.  _Employees in NV, OR, SD, and WA Only:_ If and only if at the time Employee executed this Agreement Employee was working for the Company in Nevada, Oregon, South

Dakota or Washington, or if a court or arbitrator deems that the law of any of these states shall govern disputes arising out of this Agreement, then the post-employment client non-solicitation covenant contained in this Paragraph 8 shall be limited as follows: Employee may do business with a Client or Prospective Client who would otherwise be covered by the above restriction so long as (i) Employee does not, directly or indirectly, solicit or initiate contact with the Client or Prospective Client or support or induce anyone else in soliciting or contacting the Client or Prospective Client (including by providing any information regarding the Client or Prospective Client), and (ii) Employee does not use or disclose any of the Company's Trade Secrets and/or Confidential Information in the process of doing business with such Client or Prospective Client.

g. _Employees in CO Only:_ If, at the time of being presented with and executing this Agreement, Employee is working for the Company in Colorado or hired to work for the Company in Colorado, or if a court or arbitrator deems that Colorado law shall govern disputes arising out of this Agreement, then the post-employment client non-solicitation covenant contained in this Paragraph 8 shall apply only if Employee is or will be employed by the Company as one of its officers or executives, or as a manager with decision-making authority, autonomy and responsibility over a business unit or department of the Company, or as professional staff to one of the Company's officers, executives or key managers. If Colorado law applies but Employee does not fit the foregoing criteria, the covenant will not apply to Employee.

h. _Employees in ID Only:_ If Employee is working for the Company in Idaho or hired to work for the Company in Idaho at the time of being presented with and executing this Agreement, or if a court or arbitrator deems that Idaho law shall govern disputes arising out of this Agreement, then the customer non-solicitation covenant contained in this Paragraph 8 shall apply only if Employee is or will be employed by the Company as one of the key employees who, by reason of the Company's investment of time, money, trust, exposure to the public, or exposure to technologies, intellectual property, business plans, business processes and methods of operation, customers, vendors or other business relationships during the course of employment, have gained a high level of inside knowledge, influence, credibility, notoriety, fame, reputation or public persona as a representative or spokesperson of the Company, and as a result, have the ability to harm or threaten the Company's legitimate business interests. If Idaho law applies but Employee does not fit the foregoing criteria, the covenant will not apply to Employee. To the extent the covenant does apply to Employee, it shall apply only as to Clients, not to Prospective Clients (as defined above).

i. _Employees in AR, CT, IN, MA, MO, NH, PA, RI, SC, SD, TN, and TX Only:_ If, at the time of being presented with and executing this Agreement, Employee is working for the Company in Arkansas, Connecticut, Indiana, Massachusetts, Missouri, New Hampshire, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee or Texas or hired to work for the Company in any of these states, or if a court or arbitrator deems that the law of any of these states shall govern disputes arising out of this Agreement, then the post-employment client non-solicitation covenant contained in this Paragraph 8 shall apply only as to Clients, not to Prospective Clients (as defined above).

j. _Employees in LA Only:_ If Employee is working for the Company in Louisiana or hired to work for the Company in Louisiana at the time of being presented with and executing this Agreement, or if a court or arbitrator deems that Louisiana law shall govern disputes arising out of this Agreement, then the client non-solicitation covenant contained in this Paragraph 8 shall apply within every Parish in the State of Louisiana, as well as within every county that immediately borders Louisiana in Mississippi,

Arkansas, and Texas, in which the Company actively performs, provides and/or solicits Products and/or Services business from, to or for Clients or Prospective Clients or carries on a like or similar business. Specifically, the restrictive geographic area in which the Company carries on a like or similar business and in which the client non-solicitation covenant contained in this Paragraph 8 shall apply includes the following Parishes within the State of Louisiana: Plaquemines, Jefferson, St. Bernard, Orleans, St. Charles, St. John, St. James, Lafourche, Terrebonne, St. Tammany, St. Mary, Assumption, Ascension, Livingston, Tangipahoa, Washington, St. Helen, East Feliciana, West Feliciana, East Baton Rouge, West Baton Rouge, Iberville, Pointe Coupee, Iberia, Vermilion, Lafayette, St. Martin, Acadia, St. Landry, Jefferson Davis, Cameron, Calcasieu, Beauregard, Allen, Evangeline, Avoyelles, Rapides, Vernon, Concordia, Catahoula, LaSalle, Grant, Natchitoches, Sabine, DeSoto, Red River, Winn, Catahoula, Tensas, Franklin, Madison, Richland, Ouachita, Jackson, Bienville, Lincoln, Caddo, Bossier, Webster, Claiborne, Union, Morehouse, West Carrol, East Carrol. In addition, the restrictive geographic area in which the Company carries on a like or similar business and in which the client non-solicitation covenant contained in this Paragraph 8 shall apply includes the following counties within the State of Mississippi: Hancock, Pearl River, Marion, Walthall, Pike, Amite, Wilkinson, Adams, Jefferson, Claiborne, Warren, Issaquena, and Washington. the restrictive geographic area in which the Company carries on a like or similar business and in which the client non-solicitation covenant contained in this Paragraph 8 shall apply also includes the following counties within the State of Arkansas: Chicot, Ashley, Union, Columbia, Lafayette, and Miller. the restrictive geographic area in which the Company carries on a like or similar business and in which the client non-solicitation covenant contained in this Paragraph 8 shall apply also includes the following counties within the State of Texas: Cass, Marion, Harrison, Panola, Shelby, Sabine, Newton, Orange, and Jefferson.

9. **Covenant Not to Compete During Term of Employment.** Employee promises that during Employee's employment with the Company, Employee shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, corporate officer, board member, director, or in any other individual or representative capacity, engage or attempt to engage in any competitive activity relating to the subject matter of Employee's employment with the Company or relating to the Company's line of business or render services to any firm or business which competes or plans to compete with the Company in the products or services being provided, marketed or developed by the Company.

10. **Conflict of Interest.** Conflict of interest is a situation in which a person has both a professional and personal interest in a business transaction. Employee agrees and promises to notify the Company in writing of any conflict of interest in a pending mortgage loan transaction or simultaneous purchase transaction, or any personal relationship with any party to either transaction, including, but not limited to the borrower, seller(s), or real estate agency or agents (the "Conflict"). This written notice must be provided once Employee becomes aware of the Conflict, but no later than the date in which the loan application is submitted for lock approval. Employee is expected to remove himself/herself and/or notify the Company to remove any other employee(s) involved in processing, underwriting or closing the transaction in which a Conflict exists.

11. **Non-Recruiting Covenant.** Employee acknowledges and agrees that the Company has invested substantial time and effort in assembling its present personnel, consultants, and independent contractors, and that, as a result of Employee's employment with the Company, Employee will become privy to and familiar with the Company's personnel, consultants, independent contractors, and recruiting practices and strategies and with the Company's human capital and talent. Therefore, to the extent permitted by applicable law, Employee agrees that during Employee's employment with the Company and for one (1) year following

Employee's termination of employment with the Company, whether voluntary or involuntary, Employee will not directly or indirectly solicit or attempt to solicit, recruit or attempt to recruit, or otherwise aid or abet any third party in soliciting or recruiting, or induce or attempt to induce, any person who is at the time of being recruited or solicited a current employee, consultant or independent contractor of the Company with whom Employee worked or had contact, whom Employee supervised or managed, or about whom Employee received or accessed any Confidential Information or Trade Secrets at any time during the last two (2) years of Employee's employment with the Company, or induce or attempt to induce any such employee, consultant or independent contractor of the Company to terminate or cease employment or other relationship with the Company or to work for or with any business that competes with the Company. Notwithstanding the foregoing, nothing in this Paragraph shall prevent Employee from receiving and considering any application or proposal from any employee, consultant or independent contractor of the Company that is not solicited by Employee or on Employee's behalf.

12. **Assignment of Interest in Inventions.**

   a. Employee agrees that any and all inventions, works of authorship, copyrightable works in any medium of expression, software (including both object and source code), database rights, formulas, ideas, discoveries, improvements, methods, processes, techniques, trade secrets, mask works, moral rights, know-how, and all other intellectual property, whether or not patentable or registrable under patent, copyright or similar laws (including, without limitation, developments and derivative works with respect to any of the foregoing, and any other forms of technology), and any and all rights and benefits resulting therefrom (collectively referred to herein as "**Inventions**"), that are made, created, developed or reduced to practice by Employee solely or jointly with others during the term of Employee's employment with the Company and that (1) are made with the Company's equipment, supplies, facilities, trade secrets, or time (including through use of the Company's internet or WiFi or any of its computers, networks, and electronic systems) or (2) relate, at the time of conception or of reduction to practice, to the business of the Company or the Company's actual or demonstrably anticipated research or development, or (3) result from any work performed by Employee for the Company or result from the use of premises owned, leased or otherwise used or acquired by the Company, shall belong to the Company and are referred to as "**Assigned Inventions,**" and Employee agrees and promises to irrevocably and permanently assign and hereby irrevocably and permanently assigns any and all rights in such Inventions to the Company or its designee.

   b. Employee will not, without the Company's prior written approval, during or after Employee's employment with the Company, design, disclose, create or in any other way use or exploit any Inventions that are identical or substantially similar to any Assigned Inventions to or for any third party.

   c. Employee agrees that any Inventions made by Employee solely or jointly with others, made after the date that this Agreement terminates, that are based on the Company's Trade Secrets, shall belong to the Company and be considered Assigned Inventions, and Employee promises to assign any and all rights in such Inventions to the Company or its designee. For the purposes of this Agreement, an Invention is based on the Company's Trade Secrets if the invention incorporates any such secrets in design or principal. For the purpose of this Agreement, an Invention is deemed to have been made during the Employee's period of employment if the Invention was conceived or actually first reduced to practice during that period.

   d. Employee also agrees that the Company shall have the right to keep any Assigned Inventions covered by this Agreement as trade secrets, and Employee agrees not to

disclose such Assigned Inventions to any third parties except as specifically authorized by the Company.

e. Employee agrees to assign to the Company or its designee all rights in any other Assigned Inventions made by Employee as required to grant those rights to the United States government or any of its agencies.

f. Notwithstanding any provision of this Paragraph 11 or its subparts, Employee shall not be required to assign, nor shall Employee be deemed to have assigned, any of Employee's rights in any inventions that Employee develops entirely on Employee's own time without using the Company's equipment, supplies, facilities, or trade secrets, except for inventions that either (1) relate, at the time that the invention is conceived or reduced to practice, to the Company's business or to actual or demonstrably anticipated research or development of the Company; or (2) result from any work performed by Employee for the Company.

g. In order to permit the Company to claim rights to which it may be entitled, Employee agrees to disclose to the Company in confidence (1) all Inventions that Employee makes, either solely or jointly with others, during the term of Employee's employment, and (2) all patent applications filed by Employee during, or within one (1) year after termination of Employee's employment. Employee also agrees to submit to a reasonable and confidential review process under which the Company may determine such issues as may arise under this Agreement.

h. Employee shall assist the Company in applying for, prosecuting, obtaining or enforcing any and all patents, copyrights or other right or protection relating to any Assigned Inventions, designs, improvements, and discoveries deemed patentable by the Company in the United States and in all foreign countries, and shall execute all documents and do all things necessary to obtain letters of patent, to vest the Company with full and extensive titles to those patents and/or copyrights, and to protect the same against infringement by others, from, during and after the termination of this Agreement. In the event that assistance of the Employee is needed after the termination of this Agreement, Employee will be paid for that assistance at the hourly rate he/she earned when this Agreement terminated.

i. If the Company is unable to secure Employee's signature on any document necessary to apply for, prosecute, obtain, or enforce any patent, copyright, or other right or protection relating to any Assigned Invention, whether due to Employee's mental or physical incapacity or any other cause, Employee hereby irrevocably designates and appoints the Company and each of its duly authorized officers and agents as Employee's Agent and Attorney-In-Fact, to act for and in Employee's behalf to execute and file any such document and to do all other lawfully permitted acts to further the prosecution, issuance, and enforcement of patents, copyrights, or other rights or protections, with the same force and effect as if executed and delivered by Employee.

j. Employee acknowledges that except as identified by Employee in Exhibit A of this Agreement, there are no inventions, original works of authorship, developments, improvements, and trade secrets that were made by Employee prior to becoming employed by the Company (collectively, "Prior Inventions") that belong to Employee, may relate to the Company's current or reasonably anticipated business, products or research and development, and are not assigned to the Company. If Employee has any interest in any Prior Inventions, Employee must disclose what they are in Exhibit B prior to executing this Agreement. If Employee does not list any Prior Inventions in Exhibit B, then Employee agrees and represents that there are no such Prior Inventions. If, during Employee's employment with the Company, Employee

incorporates into a Company product or process a Prior Invention listed in Exhibit B that is owned by Employee or in which Employee has an interest, Employee agrees that the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine.

k.  Employee acknowledges that all original works of authorship which are made by Employee (solely or jointly with others) within the scope of Employee's employment with the Company and which are eligible for copyright protection are "works made for hire" as that term is defined in the United States Copyright Act (17 U.S.C., Section 101).

13. **Reasonableness of Restrictive Covenants.** Employee acknowledges that Employee has carefully read and considered Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 of this Agreement and agrees that the restrictions set forth therein are fair and reasonable, are supported by valid consideration, and are reasonably required to protect the legitimate business interests of the Company. Employee acknowledges and agrees that the restrictions herein do not and will not interfere with or unduly limit Employee's ability to obtain suitable alternative employment following termination of employment. By employing or continuing to employ Employee, the Company is relying on Employee's representation in this Paragraph that Employee has carefully read and considered the restrictive covenants contained in this Agreement and agrees they are reasonable, supported by valid consideration, and are reasonably required to protect the legitimate business interests of the Company. Accordingly, Employee agrees that Employee shall be legally estopped from taking any position in any proceeding or forum that is inconsistent with this Paragraph.

14. **Prior Agreements, Relationships and Commitments.**

a.  Except as disclosed in the form attached hereto as Exhibit B, Employee represents and warrants that Employee has no agreements, relationships, or commitments to any other person or entity that conflict with or would prevent Employee from performing any of Employee's obligations to the Company under this Agreement, or would otherwise prevent Employee from performing Employee's job duties while employed by the Company.

b.  Employee will not disclose and has not disclosed to the Company and will not use, or induce the Company to use, any trade secrets or confidential information of others. Employee represents and warrants that Employee has returned all property, trade secrets and confidential information belonging to others and is not in possession of any such property, confidential information or trade secrets. Employee has not and will not bring onto the premises of the Company or transfer to any of the Company's computers, servers or systems any confidential or proprietary document of any other employer, person or entity unless consented to in writing by such employer, person or entity.

c.  Employee agrees to indemnify, defend and hold harmless the Company and its officers, directors and employees from any and all claims, damages, costs, expenses or liability, including reasonable attorney's fees incurred in connection with or resulting from any breach or default of the representations and warranties contained in this Paragraph.

d.  Employee covenants that Employee will not hereafter enter into any covenants or agreements or undertake any other acts that conflict with the representations and warranties contained in this Paragraph.

15. **Termination of Employment.** If Employee's employment with the Company is terminated for any reason, whether voluntarily or involuntarily, Employee shall promptly, regardless of whether requested by Company to do so at the time of Employee's termination:

    a. Inform the Company of and deliver to the Company all records, files, electronic data, documents, plans, reports, books, notebooks, notes, memoranda, correspondence, contracts and the like in Employee's possession, custody or control that contain any of the Company's Trade Secrets or Confidential Information which Employee prepared, used, or came in contact with while employed by the Company;

    b. inform the Company of and deliver to the Company all records, files, electronic data, documents, plans, reports, books, notebooks, notes, memoranda, correspondence, contracts and the like in Employee's possession, custody or control that pertain in any way to the business of the Company and which Employee prepared, used, or came in contact with while employed by the Company;

    c. deliver to the Company all tangible property in Employee's possession, custody or control belonging to the Company, including, but not limited to, key cards, office keys, cell phone, pagers, personal digital assistants, external hard drives, thumb drives, zip drives, laptop computers and desktop computers;

    d. if Employee had used any personal electronic device in connection with Company business, including any personal desktop computer, laptop computer, thumb drive, zip drive, and/or external hard drive, allow a Company representative to inspect such device(s) to determine whether any of the Company's Trade Secrets and/or Confidential Information reside on said device and to remove any such Trade Secrets and/or Confidential Information; and

    e. sign the Certificate of Compliance Post-Termination attached hereto as Exhibit C.

16. **Exit Interview.** In the event Employee's employment with the Company is terminated for any reason, whether voluntarily or involuntarily, Employee will, if requested, participate in an exit interview with the Company and reaffirm in writing Employee's understanding of Employee's obligations as set forth in this Agreement. Employee agrees to provide the Company with the name and address of any business or entity that Employee may join after Employee's separation from the Company, and Employee agrees to supplement that information as required during the term of any restrictions set forth in this Agreement.

17. **Injunctive Relief.** Employee acknowledges and agrees that if the Company's Trade Secrets and/or Confidential Information were disclosed to a competing business or used in an unauthorized manner as provided herein, such unauthorized disclosure or use would cause immediate and irreparable harm to the Company and would give a competing business an unfair business advantage against the Company for which the Company may not have an adequate remedy at law. Employee further acknowledges that because of the nature of the Company's business and the subject matter of this Agreement, a breach or attempted breach of Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 of this Agreement will cause substantial injury to the Company for which money damages alone may not provide an adequate remedy. As such, Employee agrees that the Company shall be entitled to any proper injunction, including but not limited to temporary, preliminary, final injunctions, temporary restraining orders, and temporary protective orders, to enforce Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 of this Agreement in the event of breach or threatened breach by Employee, in addition to any other remedies available to the Company at law or in equity. The restrictive covenants contained in this Agreement are independent of any other obligations between the parties, and the existence of any other claim or cause of action against the Company is not a defense to enforcement of said covenants by injunction. Employee agrees that in connection with any

application for injunctive relief, discovery shall be conducted on an expedited basis even without a court order permitting or granting leave to conduct expedited discovery, and neither party will require the other to post a bond at any stage in litigation or arbitration of such matter, and both parties hereby waive the right to request posting of a bond by the party requesting injunctive relief. Employee further agrees that Employee shall not, in any proceeding involving it, relating to the enforcement of Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 of this Agreement, raise the defense that the Company has an adequate remedy at law.

18. **Assignment.** This Agreement, including all rights and assignments granted by Employee under this Agreement, is assignable by the Company, including, without limitation, to any affiliate of the Company or any entity with which, or into which, the Company may be merged or which may succeed to its assets or business, and all covenants and agreements hereunder shall inure to the benefit of and be enforceable by such successors or assigns with the necessity that this Agreement be re-signed at the time of such assignment. Employee shall not assign or delegate any rights or obligations under this Agreement to any other person or entity, including, without limitation, by operation of law, merger, sale of all or substantially all of Employee's assets or otherwise.

19. **Notice to Third Parties.** Employee authorizes the Company to provide a copy of this Agreement to third parties, including, but not limited to, Employee's subsequent, anticipated, or possible future employers or any other business or entity that Employee may join in the future, and to notify such employers or entities of Employee's rights and obligations under this Agreement.

20. **Incorporation of Recitals.** The Recitals referenced at the beginning of this Agreement are hereby incorporated by this reference into this Agreement as material terms of this Agreement.

21. **Attorneys' Fees.** Employee and the Company agree that in any legal proceeding undertaken to enforce the terms and provisions of this Agreement, the prevailing party shall be entitled to reimbursement of its actual costs and expenses, including without limitation its reasonable attorneys' fees and expenses.

22. **Employment.** Employee agrees and understands that nothing in this Agreement shall confer any right with respect to continuation of employment with the Company, nor shall it interfere in any way with Employee's right or the Company's right to terminate Employee's employment at any time, with or without cause, with or without notice.

23. **Waiver.** No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right.

24. **Interpretation.** This Agreement shall be construed as a whole, according to its fair meaning, and not in favor of or against any party, and shall be deemed to have been drafted by both parties. Captions are used for reference purposes only and should be ignored in the interpretation of this Agreement.

25. **Tolling and Suspension.** In the event of a breach by Employee of any restrictive covenant contained in this Agreement, the running of the period of restriction shall automatically be tolled and suspended for the amount of time the breach continues, and shall automatically commence when the breach is remedied so that the Company shall receive the benefit of Employee's compliance with the terms and conditions of this Agreement.

26. **Severability and Judicial Modification.** Each provision of this Agreement is intended to be severable. If any court of competent jurisdiction determines that one or more of the provisions of this Agreement, or any part thereof, is or are invalid, illegal or unenforceable, such invalidity,

illegality or unenforceability shall not affect or impair any other provision of this Agreement, and this Agreement shall be given full force and effect while being construed as if such invalid, illegal or unenforceable provision had not been contained within it. If the scope of any provision in this Agreement is found to be too broad to permit enforcement of such provision to its full extent, Employee consents to judicial modification of such provision and enforcement to the maximum extent permitted by law.

27. **Choice of Law; Jurisdiction.** All issues and questions concerning the construction, validity, enforcement, and interpretation of this Agreement shall be governed by, and construed in accordance with, the laws of the state in which Employee worked for or was employed by the Company at the time this Agreement is executed by Employee, without giving effect to any choice of law or conflict of law rules or provisions (whether of this state or any other jurisdiction) that would cause the application of the laws of any other jurisdiction. Subject to any applicable arbitration agreement, each of the parties irrevocably consents to the exclusive personal jurisdiction of the state and federal courts located in the foregoing state for any action or dispute arising out of or relating to this Agreement, except that in actions seeking to enforce any order or any judgment of such state or federal courts, such personal jurisdiction shall be non-exclusive.

28. **Counterparts and Facsimile/Digital Signatures.** This Agreement may be executed in any number of counterparts, each of which will be deemed to be an executed Agreement and each of which shall be deemed to be one and the same instrument. A facsimile or digital signature shall be treated as an original signature for all purposes.

29. **Entire Agreement.** This is the entire agreement between the Company and Employee regarding the secrecy, use and disclosure of the Company's Trade Secrets and Confidential Information and this Agreement supersedes any and all prior agreements regarding these issues. No other agreement, statement, or promise as to any matter addressed in this Agreement shall be binding or valid. This Agreement cannot be orally modified. Any amendment or modification to this Agreement must be in writing, signed by Employee and a duly authorized representative of the Company. This Agreement consists of a series of separate restrictive covenants, all of which shall survive and be enforceable in law and/or equity after Employee's termination or cessation of employment.

***The undersigned acknowledges that he/she has read and understood this Agreement, and that he/she signs this Agreement intending to be bound by its terms as of the date indicated below.***

☑ **Signature** Joseph Heister 5/12/2020 11:09 AM
(checking the checkbox above is equivalent to a handwritten signature)

**Accepted and agreed to:**
**PARAMOUNT RESIDENTIAL MORTGAGE GROUP**

☐ **Signature**
(checking the checkbox above is equivalent to a handwritten signature)

---

**EXHIBIT A**

**EMPLOYEE'S PRIOR INVENTIONS**

I represent and warrant that, except for the following, there are no inventions, original works of authorship, developments, improvements, and trade secrets that were made by me prior to becoming employed by the Company (collectively, "**Prior Inventions**") that belong to me, that may relate to the Company's current or reasonably anticipated business, products or research and development, and that I have not assigned to the Company.



**Signature** Joseph Heister 5/12/2020 11:09 AM
(checking the checkbox above is equivalent to a handwritten signature)

---

### EXHIBIT B

### PRIOR AGREEMENTS, RELATIONSHIPS AND COMMITMENTS

I represent and warrant that, except as disclosed below, I have no agreements, relationships, or commitments to any other person or entity that conflict with or would prevent me from performing any of my obligations to the Company under this Agreement, or would otherwise prevent me from performing my job duties while employed by the Company (if none, so state):

**Signature** Joseph Heister 5/12/2020 11:09 AM
(checking the checkbox above is equivalent to a handwritten signature)

---

### EXHIBIT C

### CERTIFICATE OF COMPLIANCE POST TERMINATION
### (*To be executed at time of termination only*)

I hereby certify that I have complied with and will continue to comply with all the terms of the Employee Confidentiality, Non-Solicitation and Inventions Assignment Agreement (the "Agreement"), which I signed. All capitalized terms used but not defined in this certificate will have the meanings ascribed to them in the Agreement.

I further certify that I do not have in my possession, nor have I failed to return to the Company, any Trade Secrets or Confidential Information or copies of such information, or other documents or materials, equipment, or other property belonging to the Company.

I further certify that I will not retain any electronic, written or other tangible material containing any information concerning or disclosing any of the Company's Trade Secrets or Confidential Information.

I agree that, in compliance with the Agreement, I will preserve as secret all of the Company's Trade Secrets or Confidential Information, and I will not participate in the unauthorized use or disclosure of the Company's Trade Secrets or Confidential Information.

On termination of my employment with the Company, I will be employed by   and will be working in connection with the following projects or matters:

☐ **Signature (*To be executed at time of termination only*)**
(checking the checkbox above is equivalent to a handwritten signature)

# EXHIBIT B



fisherphillips.com

**Philadelphia**
Two Logan Square
100 N. 18th Street
12th Floor
Philadelphia, PA 19103
(610) 230-2150 Tel
(610) 230-2151 Fax

**Writer's Direct Dial:**
(610) 230-2135

**Writer's E-mail:**
bcossrow@fisherphillips.com

May 18, 2022

**Via Federal Express & Electronic Mail**

Richard Steinberg
Founder & Chairman
Nationwide Mortgage Bankers, Inc.
310A Main Street
Lebanon, New Jersey 08833
rsteinberg@nmbnow.com

David Zabran
Executive Vice President of Compliance
Nationwide Mortgage Bankers, Inc.
310A Main Street
Lebanon, New Jersey 08833
dzabran@nmbnow.com

*Re: Paramount Residential Mortgage Group, Inc.*

Dear Messrs. Steinberg and Zabran:

Fisher & Phillips LLP and I represent Paramount Residential Mortgage Group, Inc. ("PRMG"), in regard to all of the issues addressed in this letter. I am writing in order to demand that Nationwide Mortgage Bankers, Inc. ("NMB") immediately cease-and-desist its sweeping employee raid of employees and trade secrets misappropriation targeting PRMG.

PRMG understands that NMB hired several PRMG Branch Managers, Business Development Managers and Loan Officers in PRMG's offices in Florida, Ohio, Indiana, Kentucky and Michigan. These PRMG executives then helped NMB to identify strategically valuable PRMG Loan Officers and staff to recruit and use in order to take PRMG's confidential information and solicit PRMG's customers to transfer their business to NMB.

With this letter, NMB is on notice that this misconduct is under a multifaceted investigation, one component of which is a forensics analysis of each former PRMG employee's use of their respective PRMG work computers, corporate email and Internet access.

**Fisher & Phillips LLP**

Atlanta • Baltimore • Bethesda • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Detroit • Fort Lauderdale • Gulfport
Houston • Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • Nashville • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Pittsburgh • Portland • Sacramento • San Diego • San Francisco • Seattle • Tampa • Washington, DC • Woodland Hills

Richard Steinberg and David Zabran
Nationwide Mortgage Bankers, Inc.
May 18, 2022
Page 2

PRMG's investigation also will compare our loan files and leads with the loans closed by NMB and these employees to further confirm and determine the extent of damages caused by these solicitations, recruiting, and misappropriation of PRMG's property.

The preliminary findings of this investigation already reflect what appears to be numerous violations of federal law, state law and the common law regarding employee defection and trade secrets theft, all of which was undertaken for the benefit of NMB.

A representative sample of the type of information and proof that this investigation has found concerns NMB's raid that began in PRMG's Indianapolis, Indiana Office. On May 12 and 13, 2022, thirty-four (34) PRMG Loan Officers and employees submitted resignation letters announcing the end of their employment at PRMG effective at 3:00 p.m. on May 13, 2022. All of these resignations deliberately were submitted to Joe Heister, PRMG's Branch Manager, and not to PRMG corporate, in order to give these thirty-four employees a head start on their misappropriation of PRMG's trade secrets and confidential information. These employees include Avhinav Adhikari, Narayan Bharati, Lorie Carter, Frank Cecil, Tracy Cecil, Surya Chhetri, Chad Dowdey, Jennifer Givens, Rob Heflin, Maddie Heister, Meghan Heister, Cory Johnson, Emily Johnson, Chhabi Lamgadey, Pushkar Mangraty, Leslie Penate, Mikim Phan, Brent Phillips, Shusil Regmi, Khem Rizal, Ja Salaam, Richard Schultz, Tika Siwakoti, Vola Siwakoti, Katie Smith, Kara Snyder, John Syroka, Nancy Terry, Adrian Tucker, Tika Upreti, Jamie Warner, Tatum Wessling, Gerry Zagone and Joe Heister. They each submitted virtually identical resignation emails and letters, and PRMG believes this was a coordinated *en masse* resignation in furtherance of NMB's raid. Copies of the thirty-four nearly identical resignation letters are enclosed.

Mr. Heister and each of the Loan Officers, Branch Managers and Business Development Managers listed above signed an Employee Confidentiality, Non-Solicitation, and Inventions Assignment Agreement ("Agreement"). In it, these employees promised PRMG that they would not compete against PRMG in any manner while they were employed by PRMG (Agreement at page 1, ¶ 1(a), (b), (e) and (f)); solicit or recruit PRMG employees to leave PRMG and join a competitor (Agreement at pages 10-11, ¶ 11); misappropriate PRMG's confidential information and trade secrets (Agreement at pages 4-5, ¶¶ 3 and 4 (a) and (b) and page 6, ¶¶ 6 (a) and (b)); attempt to divert clients or business from PRMG to a competitor (Agreement at pages 7-8, ¶¶ 8); and use PRMG's computers in an unauthorized way (Agreement at pages 5-6, ¶ 5 (a), (b), (d), (e) and (g)). A copy of Mr. Heister's Agreement is enclosed. Each of these employees also agreed to comply with PRMG's workplace policies regarding confidential information and conflicts of interest.

This raid and the confidential information and trade secrets misappropriation would give rise to causes of action against NMB for direct and vicarious liability sounding under:

- U.S. Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq.
- U.S. Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, et seq.
- The Uniform Trade Secrets Acts of Several States

Richard Steinberg and David Zabran
Nationwide Mortgage Bankers, Inc.
May 18, 2022
Page 3

- Aiding and Abetting Breaches of Fiduciary Duties of Loyalty
- Tortious Interference with Employee Agreements
- Tortious Interference with Client Agreements
- Civil Conspiracy
- Unfair Competition
- Unjust Enrichment

This letter is a formal demand that NMB immediately cease and desist from engaging in the unlawful conduct set forth above and stop what has already occurred. PRMG hereby demands that NMB and its agents, including the raided PRMG employees, refrain from recruiting or soliciting any current PRMG employees. Further, PRMG demands that you immediately undertake appropriate actions to ensure that PRMG's trade secrets and/or confidential information is found, quarantined and not used, published, or disclosed.

This letter also constitutes a litigation hold demand directed to NMB and all of its employees, personnel and agents who were involved in the recruitment of the PRMG employees listed above and others whom NMB recruited. The scope of this litigation hold demand specifically includes documents, electronically stored information and material related to the issues set forth in this letter that are in NMB's possession, custody or control ("Litigation Hold Material"). Under the Federal Rules of Civil Procedure, "control" in this context includes and means that NMB must take affirmative steps to identify and gather Litigation Hold Material in the possession or custody of NMB's employees. This means that NMB must preserve email and text messages in the personal email accounts (not corporate), personal (not corporate) smart phones and personal (not corporate) computers of its employees, because these NMB employees used their personal email accounts and smart phones to execute this raid. To be clear, all Litigation Hold Material relating in any way to the business of PRMG and the solicitation and recruitment of PRMG's employees on behalf of NMB (including, but not limited to, text messages, personal emails, phone records, messaging apps, social media messages, etc.) are to be preserved. Under no circumstances should NMB allow any materials to be destroyed or altered. Your failure to retain this evidence would trigger civil and evidentiary liability, and could result in severe sanctions in future litigation.

To avoid any misunderstanding, PRMG demands that NMB immediately refrain from:

1.    Soliciting and recruiting, either directly or indirectly, any PRMG employees; and

2.    Inducing PRMG employees to terminate or cease employment with PRMG; and

3.    Soliciting all past, present, or future PRMG customers; and

4.    Using, publishing, and disclosing PRMG's leads, trade secrets, and confidential information (this includes that you take appropriate actions to ensure that PRMG's leads, trade secrets, and confidential information are not used, published, or disclosed by the PRMG employees or NMB).

Richard Steinberg and David Zabran
Nationwide Mortgage Bankers, Inc.
May 18, 2022
Page 4

PRMG's investigation is ongoing. This letter is sent without waiver of or prejudice to PRMG's rights and remedies, and PRMG specifically reserves all of its rights and remedies, legal, equitable, and otherwise, including the right to institute a civil action at any time for injunctive relief, monetary damages, attorney's fees and costs, and/or other damages.

This letter involves important legal rights and issues. Please forward or share a copy of this letter with NMB's attorneys and ask them to contact me.

Sincerely,

BRENT A. COSSROW
FISHER & PHILLIPS LLP


cc:    Simin Akbar, General Counsel
       Paramount Residential Mortgage Group, Inc.


Enclosures

# EXHIBIT C



May 31, 2022

**Christopher J. Kelly**

Direct Phone   215-366-4471
Direct Fax      215-701-2121
cjkelly@cozen.com

**VIA E-MAIL (BCOSSROW@FISHERPHILLIPS.COM)**

Brent Cossrow
Fisher & Phillips, LLP
Two Logan Square
100 N. 18th Street
12th Floor
Philadelphia, PA 19103

**Re:    Paramount Residential Mortgage Group, Inc.**

Dear :

       This firm is counsel to Nationwide Mortgage Bankers, Inc. ("NMB").  I write in response to your letter of May 18, 2022 pertaining to the hiring by NMB of certain employees who previously worked for your client, Paramount Residential Mortgage Group ("PRMG").  While we appreciate the time you took to lay out PRMG's purported claims against NMB, we have reviewed your claims and the relevant documentation with our client and believe that the threatened claims are baseless as a matter of law, and as a matter of fact.   Nevertheless, I am writing at this time to respond generally to the contentions in your May 18th letter, and reserve our right to address any of these issues in further detail to the extent it becomes necessary for us to do so in a different forum.

       As we understand your letter, the common theory underlying all of your arguments and demands is: (i) that NMB has hired 34 former employees of PRMG (the "Employees"); and (ii) that PRMG believes that those Employees having submitted one to two sentence resignation letters which used similar language and setting the same effective date/time for their resignations implies that they intended to steal trade secrets and/or confidential information.  You further contend that this conduct violates the employee's respective employment agreements[1].  As an initial matter, I note that the language in the resignation emails which were attached to your letter is not surprising and simply offers an effective date for their resignations, as in one example: "I tender my resignation from PRMG effective at…". Some of the emails also thank PRMG for the opportunity to have worked there and wish PRMG continued success.  No inference of misappropriation can be drawn simply because Employees resigned at the same time or used common language.  Importantly, nowhere in your letter do you identify any particular trade secrets or confidential information that were allegedly misappropriated, nor have you identified any particular instances of theft of any trade secret or confidential information.

---

[1]     Attached to your letter was a copy of what appears to be an employment agreement for Mr. Heister.  I have not confirmed the details of this agreement with Mr. Heister and none of the employment agreements for the other employees were attached.  For purposes of this letter, I accept your representation that all thirty-four employees signed agreements with nearly identical terms, but reserve the right to investigate further should this matter proceed.

LEGAL\58124745\1

Brent Cossrow
May 31, 2022
Page 2

_____

      The Employees worked in Indiana and the sample employment agreement you provided notes that the agreement is governed by the law of the state where the employees work.  Indiana law generally disfavors restrictive covenants and the former employer bears the burden of establishing both that they have a legitimate protectable interest, and that the agreement is reasonable in the scope of its restrictions.  *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 811 (Ind. Ct. App. 2000); *Central Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723 (Ind. 2008).  PRMG must do more than simply assert that the employees cannot work at a competitor and must have taken trade secrets or confidential information.

      NMB has not utilized any of PRMG's confidential information or trade secrets and has no intention of doing so in the future.  As NMB is not in possession of any trade secrets or confidential information of PRMG, NMB is willing, in an attempt to resolve this matter, to agree as you requested to refrain from: "Using, publishing, and disclosing PRMG's leads trade secrets and confidential information…"   NMB is also willing to remind the Employees that they are not to disclose any confidential information or trade secrets of PRMG.

      PRMG also asserts that the Employees violated a non-solicit/recruit provision in their employment agreements (Paragraph 11) and a provision that bars them from diverting clients or business to a competitor (Paragraph 8).  As a result, you request that NMB not solicit or recruit PRMG employees, induce PRMG employees to terminate or cease their employment with PRMG, and not solicit "all past, present or future PRMG customers."[2]  The Department of Justice has taken a very strong position that agreements not to hire a competitor's employees are a *per se* violation of the Sherman Act.  *See E.g. In re Ry. Indus. Employee No-Poach Antitrust Litig.*, 395 F.Supp.3d 464, 481, 485 (W.D. Pa. 2019) ("The court's decision that the agreements alleged by plaintiff are plausibly per se violations of the antitrust laws is supported by the government's explanation... that the federal agencies charged with enforcing the antitrust laws consider naked no-poach agreements per se violations of the Sherman Act[ ] and the DOJ will proceed criminally against those who enter into those kinds of agreements.").  Similarly an agreement that NMB refrain from soliciting PRMG's customers, including even potential **future** customers is by its very nature anti-competitive.  Accordingly, NMB cannot agree to such provisions and potentially subject itself to criminal liability.  However, as noted above, NMB does not intend to compete with PRMG using any confidential information or trade secrets of PRMG and is willing to caution the Employees not to disclose such information or use that information in the course of their work for NMB.

      Moreover, even under Indiana law, such provisions would be unenforceable.  There is a "presumption under Indiana law that a covenant cannot restrain employees from doing business with their ex-employer's past customers…"*Jak Prods., Inc. v. Wiza*, 986 F.2d 1080, 1089 (7th Cir. 1993).  Any restrictions on solicitation of employees must be limited to those who "have access to or possess any knowledge that would give a competitor an unfair advantage."  *Heraeus Med., LLC v. Zimmer, Inc.*, 135 N.E.3d 150, 155 (Ind. 2019).  The Non-Recruiting Covenant in Paragraph 11 of the sample agreement is far broader than that and precludes, *inter alia*, soliciting any PRMG employee that the departing employee had contact with and those supervised by the departing employee.  Such provisions are overly broad and may not be limited by a Court to make them enforceable.  *Id.* at 155-156.

_____

[2]    Your letter also mentions a provision barring competition with PRMG *during* employment, but since the employees were not working for Nationwide until after they resigned from PRMG, that provision does not appear to be applicable to the instant dispute.

Brent Cossrow
May 31, 2022
Page 3

_____

NMB is prepared to vigorously, fully and publicly defend any claims brought by you and your client in any forum.  We do, however, hope that none of that will be necessary.  In that vein, we have offered to remind the Employees that they cannot use any confidential information or trade secrets of PRMG in their employment at NMB and have confirmed that NMB does not possess and is not seeking any such confidential information or trade secrets of PRMG.  I would be happy to discuss any of the above with you.

Very truly yours,

COZEN O'CONNOR

By:    Christopher J. Kelly

CJK/jw